# 11-0734-cv

# United States Court of Appeals
## for the
## Second Circuit

DIANE LEE SUSSMAN, STEVIE HARISTON, CAROLE TASSY,
MARY MAHONEY, LINDA MARRONE, MARY OLDAK,
VOLVICK DESIL, STEPHANIE UHRIG,

*Plaintiffs,*

MASAHIRO NAKAHATA, on behalf of herself and all other employers
similarly situated, DIANA GARDOCKI, on behalf of herself and
all other employees similarly situated,

*Plaintiffs-Appellants,*

– against –

NEW YORK-PRESBYTERIAN FUND, INC., NEW YORK-PRESBYTERIAN
HOSPITAL, BROOKLYN HOSPITAL CENTER, HOLY NAME HOSPITAL, INC.,
HOLY NAME MEDICAL CENTER, LAWRENCE HOSPITAL CENTER,
MARY IMOGENE BASSETT, oNAL CARE NEW MILFORD HOSPITAL, INC.,

*(For Continuation of Caption See Reverse Side of Cover)*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

TERENCE K. MCLAUGHLIN
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

KENNETH J. KELLY
JAMES S. FRANK
KENNETH W. DIGIA
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4500

*Attorneys for Defendants-Appellees*

NEW YORK COMMUNITY HOSPITAL OF BROOKLYN, INC., NEW YORK
DOWNTOWN HOSPITAL, NEW YORK HOSPITAL MEDICAL CENTER OF
QUEENS, NEW YORK METHODIST HOSPITAL, WESTCHESTER SQUARE
MEDICAL CENTER, INC., NYACK HOSPITAL, PALISADES MEDICAL CENTER,
STAMFORD HOSPITAL, VALLEY HOSPITAL, WHITE PLAINS MEDICAL
CENTER, WINTHROP-UNIVERSITY HOSPITAL, WYCHOFF HEIGHTS
MEDICAL CENTER, ST. MARY'S HEALTHCARE SYSTEM FOR CHILDREN, INC.,
A. SOLOMON TORRES, NEW YORK SOCIETY FOR THE RELIEF OF THE
RUPTURED AND CRIPPLED, MAINTAINING THE HOSPITAL FOR SPECIAL
SURGERY, MARY IMOGENE BASSETT HOSPITAL, NEW MILFORD HOSPITAL,
INC., NORTHERN WESTCHESTER HOSPITAL ASSOCIATION, WHITE PLAINS
HOSPITAL MEDICAL CENTER, WYCKOFF HEIGHTS MEDICAL CENTER,
NEW YORK GRACIE SQUARE HOSPITAL, INC., AMSTERDAM NURSING
HOME CORPORATION,

*Defendants,*

NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., HERBERT
PARDES, NEW YORK AND PRESBYTERIAN HOSPITAL, WAYNE OSTEN,

*Defendants-Appellees.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for Defendants-Appellees states as follows:

The New York and Presbyterian Hospital is a New York not-for-profit corporation, it does not have any publicly traded stock, and it is engaged in providing health care services in New York City.

The New York-Presbyterian Healthcare System, Inc. is a New York not-for-profit corporation and it does not have any publicly traded stock.

New York, New York
March 12, 2012

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: /s/ Kenneth J. Kelly
  James S. Frank
  Kenneth J. Kelly
  Kenneth W. DiGia
 250 Park Avenue
 New York, New York  10177-1211
 (212) 351-4500

WILLKIE FARR & GALLAGHER

By: /s/ Terence K. McLaughlin
  Terence K. McLaughlin
 787 Seventh Avenue
 New York, NY 10019
 (212) 728-8000
Attorneys for Defendants-Appellees

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES.................................................................. 1

STATEMENT OF FACTS ........................................................................ 4

SUMMARY OF ARGUMENT .................................................................. 8

ARGUMENT

POINT I

THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS'
FLSA CLAIMS ........................................................................................ 12

    A.  Plaintiffs Failed to Adequately Plead that They Worked
        Overtime ...................................................................................... 12

    B.  Plaintiffs Did Not Plausibly Allege They Were Employed
        by Defendants ............................................................................. 19

    C.  Plaintiffs' Conclusory Allegations Are Insufficient to Establish
        that Dr. Pardes and Mr. Osten Are "Employers" ....................... 26

POINT II

THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS'
NYLL CLAIMS ...................................................................................... 27

POINT III

THE DISTRICT COURT CORRECTLY RULED THAT
PLAINTIFFS' CLAIMS COULD BE OR WERE BARRED
BY SECTION 301 ................................................................................... 29

POINT IV

PLAINTIFFS' COMMON LAW CLAIMS ARE PREEMPTED
BY THE FLSA ........................................................................................ 34

POINT V

THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS'
COMMON LAW CLAIMS ...................................................................  37

    A.   Breach of Contract ...................................................................  37

    B.   Implied Covenant of Good Faith and Fair Dealing ...................  38

    C.   Quantum Meruit and Unjust Enrichment/Restitution ................  39

    D.   Fraud ........................................................................................  41

    E.   Negligent Misrepresentation ....................................................  43

    F.   Conversion ...............................................................................  43

    G.   Estoppel....................................................................................  44

POINT VI

PLAINTIFFS' RICO CLAIM WAS CORRECTLY DISMISSED .........  45

    A.   Plaintiffs' Mail Fraud Allegations Do Not Comply
        with Rule 9(b) ...........................................................................  45

    B.   Plaintiffs Fail to Identify the Purpose of the Mailing ................  49

    C.   Plaintiffs Fail to Allege Facts Giving Rise to a Strong
        Inference of Fraudulent Intent ..................................................  50

    D.   Failure to Allege Pattern of Racketeering Activity ....................  50

    E.   Plaintiffs Do Not Distinguish the Persons
        from the Enterprise ...................................................................  51

    F.   Even if Plaintiffs Had Adequately Pleaded a RICO Claim,
        They Lack Standing to Pursue a RICO Claim...........................  52

    G.   Plaintiffs' RICO Claim is Precluded by the FLSA....................  53

<u>POINT VII</u>

    THE SUFFICIENCY OF PLAINTIFFS' COLLECTIVE/CLASS
    ALLEGATIONS IS NOT RIPE FOR DETERMINATION....................    53

<u>POINT VIII</u>

    THE DISTRICT COURT CORRECTLY DENIED LEAVE
    TO AMEND ...........................................................................................    54

<u>POINT IX</u>

    THIS CASE SHOULD NOT BE ASSIGNED TO A NEW JUDGE
    IF REMANDED .......................................................................................    55

CONCLUSION ...........................................................................................    57

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(A) ..........    58

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*ACA Fin. Guar. Corp. v. Advest Inc.*, 512 F.3d 46 (1st Cir. 2008) ............. 55

*Acho v. Cort*, No. C. 09-00157 MHP, 2009 WL 3562472
  (N.D. Cal. Oct. 27, 2009) .......................................................... 19

*Acosta v. Yale Club of N.Y.C.,* No. 94 Civ. 0888 (KTD),
  1995 WL 600873 (S.D.N.Y. Oct. 12, 1995) ............................ 15

*Allen v. City of Chicago,* No. 10c3183, 2011 WL 941383
  (N.D. Ill. Mar. 15, 2011) ........................................................ 19n.9

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985).................................. 29

*Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629
  (E.D.N.Y. 2003) ....................................................................... 41

*Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007) ....................... 34

*Anderson v. Theriault Tree Harvesting, Inc.*, No. 08-330-B-W,
  2010 WL 323530 (D. Me. Jan. 20, 2010) ............................... 24

*Anish v. Nat'l Sec. Corp.*, No. 10-80330-CIV-MARRA,
  2010 WL 4065433 (S.D. Fla. Oct. 15, 2010).......................... 19n.9

*Arnold v. DirecTV, Inc.,* No. 4:10 cv 00352 AGF, 2011 WL 839636
  (E.D. Mo. Mar. 7, 2011)........................................................ 19n.9

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)............................ 19n.9, 27

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988) ................... 48

*Barfield v. N.Y.C. Health and Hosp. Corp.*, 537 F.3d 132
  (2d Cir. 2008) .............................................................. 19-20, 24, 25

*Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243
  (W.D.N.Y. 2010) ....................................................... 42, 49, 50

*Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995)............................................... 48

*Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181
(E.D.N.Y. 2004) ...................................................................... 39, 40

*Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474 (WK),
2001 WL 314622 (S.D.N.Y. Mar. 30, 2001) ............................ 26, 27

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater
N.Y.*, No. 07-CV-1471 (RRM/LB), 2009 WL 928718 (E.D.N.Y.
Mar. 31, 2009) ...................................................................... 42

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-85J, 2009 WL 2940067
(W.D. Pa. Sept. 11, 2009)........................................................ 49

*Camesi v. University of Pittsburgh Medical Center*, No. 09-85J,
2011 WL 6372873 (W.D. Pa. Dec. 20, 2011)............................ 18n.8

*Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092 (NRB),
2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007)........................... 24n.11

*Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984) ........... 24

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)........................................ 31n.15

*Cavallaro v. UMass Mem'l Health Care Inc.*,
No. 09-40152-FDS, 2011 WL 2295023 (D. Mass.
June 8, 2011)........................................................................... 21, 22

*Cavallaro v. UMass Mem'l Health Care Inc.*,
No. 09-40152-FDS, 2010 WL 3609535 (D. Mass.
July 2, 2010) .......................................................... 27, 42, 47n.21

*Cavallaro v. UMass Mem'l Health Care Inc.*,
No. 09-40181-FDS, slip op. document no. 33 ........................ 34

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) ............... 51, 52

*Chao v. A-One Med. Servs. Inc.*, 346 F.3d 908 (9th Cir. 2003) ................ 24

*Choimbol v. Fairfield Resorts, Inc.*, No. 2:05cv463, 2006 WL 2631791
(E.D. Va. Sept. 11, 2006) ...................................................... 53

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382 (1987)......... 39

*Clearing House Ass'n, L.L.C. v. Cuomo*, 510 F.3d 105 (2d Cir. 2007),
  *aff'd in part, rev'd in part on other grounds*, 552 U.S. 519 (2009)......... 34

*Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994).............................................. 42

*Cornell v. CF Ctr., LLC*, 410 F. App'x 265 (11th Cir. 2011) .................... 24n.11

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989)............................................. 45

*Curran v. Fedex Ground Package Sys., Inc.*, 593 F. Supp. 2d 341
  (D. Mass. 2009) ....................................................................................... 55

*Davis v. Abington Mem'l Hosp.*, _____ F. Supp. 2d _____,
  2011 WL 4018106 (E.D. Pa. Sept. 8, 2011)............................................. 22

*Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746 DLC, 2004 WL 1926087
  (S.D.N.Y Aug. 31, 2004)........................................................................ 36n.18

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ...................................... 51, 52

*DeSilva v. Northshore-Long Island Jewish Health Sys.,
  Inc.*, 770 F. Supp. 2d 497 (E.D.N.Y. 2011)............. 15, 34, 36, 40, 43, 45, 51, 53

*Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991)............. 24

*EBusinessware, Inc. v. Tech. Servs. Group Wealth Mgmt. Solutions, LLC*,
  No. 08 Civ. 09101 (PKC), 2009 WL 5179535 (S.D.N.Y. Dec. 29,
  2009) ...................................................................................................... 43

*Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12
  (1st Cir. 2000)........................................................................................ 51

*Ehrlich v. Howe*, 848 F. Supp. 482 (S.D.N.Y. 1994) ................................ 44

*Eldred v. Comforce Corp.*, No. 3:08-cv-1171 (LEK/DEP),
  2010 WL 812698 (N.D.N.Y. Mar. 2, 2010)............................................. 44, 53

*Elswick v. Daniels Elec. Inc.*, 787 F. Supp. 2d 443 (S.D. W. Va. 2011)..... 30n.14

*Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 02667 (LMM),
  2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008) ........................................... 43

*First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162
  (2d Cir. 1998) ........................................................................................ 37

*Frangipani v. HBO*, No. 08 Civ. 5675 (GBD), 2010 WL 1253609
(S.D.N.Y. Mar. 16, 2010)........................................................... 52

*Gaind v. Pierot*, No. 04-CV 9407 (TPG), 2006 WL 846268 (S.D.N.Y.
Mar. 31, 2006), *aff'd*, 282 F. App'x 946 (2d Cir. 2008) ......................... 45

*Goldberg v. Whitaker House Co-Op., Inc*., 366 U.S. 28 (1961) ................ 20

*Gordon v. Kaleida Health*, No. 08-cv-378S, 2008 WL 5114217
(W.D.N.Y. Nov. 25, 2008), *amended by*, No. 08-CV-378S,
2009 WL 4042929 (W.D.N.Y. Nov. 19, 2009).................................... 19n.9, 28

*Gray v. Powers,* No. 10-20808, Document No. 00511771680
(5th Cir. Feb. 29. 2012) ............................................................ 27

*Gross v. Empire Healthchoice Assur. Inc*, 16 Misc. 3d 1112(A),
2007 WL 2066390 (N.Y. Sup. Ct. N.Y. County 2007)............................ 38

*Gross v. Waywell*, 628 F. Supp. 2d 475 (S.D.N.Y. 2009) .......................... 51

*Harary v. Lollytogs, Ltd*., No. 07 cv 7878 (RPP), 2008 WL 294345
(S.D.N.Y. Feb. 1, 2008)............................................................. 39

*Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) ..... 38

*Hart v. Verizon Commc'n, Inc*., No. Civ. A 03-11811-RWZ,
2004 WL 438786 (D. Mass. Mar. 9, 2004) ....................................... 31, 34

*Hellenberg v. Integrated Deicing Servs*. *LLC*, No. 10-cv-11364,
2011 WL 317733 (E.D. Mich. Feb. 1, 2011) ..................................... 19n.9

*Herman v. RSR Sec. Servs. Ltd*., 172 F.3d 132 (2d Cir. 1999)........... 20, 24, 26, 27

*Hibbs-Rines v. Seagate Techs, LLC*, No. C 08-05430-SI,
2009 WL 513496 (N.D. Cal. Mar. 2, 2009) ....................................... 22

*Hinterberger v. Catholic Health Sys.*, No. 1:08-cv-00952-WMS,
docket no. 34 (W.D.N.Y. Jan. 17, 2012)..................................... <u>passim</u>

*Hinterberger v. Catholic Health*, No. 08-cv-380S,
2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008)...................................... 19n.9

*Hofmann v. Aspen Dental Mgmt., Inc*., No. 3:10-cv-37-SEB-WGH,
2011 WL 3902773 (S.D. Ind. Sept. 6, 2011) ..................................... 18

*In re Bank of Am. Wage and Hour Employment Litig.*, No. 10-MD-2138-JWL, 2010 WL 4180567 (D. Kan. Oct. 20, 2010) ................................... 18

*In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277 (W.D. Pa. 2010) ................................................. 24, 25n.12

*Intellectual Capital Partner v. Institutional Credit Partners, LLC*, No. 08 Civ. 10580 (DC), 2009 WL 1974392 (S.D.N.Y. July 8, 2009) ..................................................................................................... 40

*J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144 (2007) ...................... 43

*Jara v. Strong Steel Door, Inc.*, 120 Misc. 3d 1135(A) (N.Y. Sup. Ct. Kings County 2008) ......................................................... 28

*Kapral's Tire Serv., Inc. v. Aztek Tread Corp.*, 124 A.D. 2d 1011 (4th Dep't 1986) ......................................................................................... 37n.19

*Kuznyetsov v. West Penn Allegheny Health Sys., Inc*, No. Civ. A. 09-379, 2009 WL 2175585 (W.D. Pa. July 20, 2009) ........................................... 48-49

*Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523 (S.D.N.Y. 2007) ..... 40

*Lavian v. Haghnazari*, 884 F. Supp. 670 (E.D.N.Y. 1995) ......................... 50

*Leber v. Berkley Vacation Resorts, Inc.*, No. 2:08-CV-01752-PMP-PA, 2009 WL 2252517 (D. Nev. July 27, 2009) ............................................. 22

*Leibowitz v. Cornell Univ.*, 445 F.3d 586 (2d Cir. 2006) ............................ 40

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ............................ 41, 56

*Levy v. Verizon Info. Servs.*, 498 F. Supp. 2d 586 (E.D.N.Y. 2007) ........... 31

*Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984) ............................. 16

*Ling Nan Zheng v. Liberty Apparel Co.*,  355 F.3d 61 (2d Cir. 2003) ........ 20, 24

*Ling Nan Zheng v. Liberty Apparel Co.*, 617 F.3d 182 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 2879 (2011) ......................................................... 20

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988) .................. 29

*Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986) ............................................. 41

*Lynne Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. 2010),
   *cert. granted, vacated*, 132 S. Ct. 74 (2011) ........................................... 36

*Mackler Prods., Inc. v. Cohen*, 225 F.3d 136 (2d Cir. 2000) ...................... 55

*Maddaloni Jewelers, Inc. v. Rolex Watch USA, Inc.*, 41 A.D.3d 269
   (1st Dep't. 2007)...................................................................................... 39

*Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08 Civ.
   6150 (PAC), 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010)...................... 52

*Manning v. Boston Medical Center Corp.*, No. Civ. A. 09-11463-RWZ,
   2011 WL 796505 (D. Mass. Feb. 28, 2011)........................................... 14, 21

*Martin v. Lake County Sewer Co.*, 269 F.3d 673 (6th Cir. 2001) .............. 30n.14

*Martinez v. Regency Janitorial Servs., Inc.*, No. 2:11-cv-259 (AEG),
   2011 WL 4374458 (E.D. Wis. Sept. 19, 2011) ....................................... 18

*Maryland Cas. Co. v. W.R. Grace and Co.*, 218 F.3d 204
   (2d Cir. 2000) ......................................................................................... 40

*McCarty v. Reynolds Metals Co.*, 883 F. Supp. 356 (S.D. Ind. 1995) ........ 34

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992)............................... 49

*Mell v. GNC Corp.*, No. Civ. A. 10-945, 2010 WL 4668966
   (W.D. Pa. Nov. 9, 2010)........................................................................ 15, 55

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ................... 41

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) ........................ 50

*Moreno v. Ferretti Grp. of Am. LLC*, No. 10-24507-CIV,
   2011 WL 4499031 (S.D. Fla. Sept. 27, 2011)........................................ 19n.9

*Moses v. Martin*, 360 F. Supp. 2d 533 (S.D.N.Y. 2004) ............................ 44

*Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169
   (2d Cir. 2006) ......................................................................................... 38

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010), *cert. denied*,
   132 S. Ct. 368 (2011) ............................................................................. 28

*Nicholson v. UTI Worldwide, Inc.*, No. 3:09-cv-722 (JPG) (DGW),
2010 WL 551551 (S.D. Ill. Feb. 12, 2010) ................................................ 18

*Nunez v. A-T Fin. Info., Inc.*, 957 F. Supp. 438 (S.D.N.Y. 1997) .............. 39n.20

*O'Rourke v. Carmen M. Pariso, Inc.*, 501 F. Supp. 2d 445
(W.D.N.Y. 2007) ...................................................................................... 28, 34

*Overnite Transportation Co. v. Tianti,* 926 F.2d 220
(2d Cir. 1991) ...................................................................... 35, 36n.18

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883
(1st Dep't 1982) ........................................................................................ 43

*Phansalkar v. Andersen Weinroth & Co., L.P.,* 175 F. Supp. 2d 635
(S.D.N.Y. 2001) ........................................................................................ 44

*Picture Patents, LLC v. Aeropostale, Inc.*, No. 07 civ 5567 (JGK),
2009 WL 2569121 (S.D.N.Y. Aug. 19, 2009) ......................................... 39-40

*Ping Chen v. Domino's Pizza, LLC*, Civ. A. No. 09-107 (JAP),
2009 WL 3379946 (D.N.J. Oct. 16, 2009) ............................................... 22

*Pruell v. Caritas Christi*, No. 09-11466-GAO, 2010 WL 3789318
(D. Mass. Sept. 27, 2010) ......................................................................... 15

*Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576
(S.D.N.Y. 1995) ........................................................................................ 53

*Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253 (2d Cir. 1999).............. 56

*Rexnord Holdings v. Bidermann*, 21 F.3d 522 (2d Cir. 1994) .................... 37

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
30 F.3d 339 (2d Cir. 1994) ....................................................................... 51

*Roman v. Maietta Constr., Inc.*, 147 F.3d 71 (1st Cir. 1998) ..................... 34

*Sampson v. Medisys Health Network, Inc., et al.*, No. 2:10-cv-01342-
SFJ-ARL, docket no. 154 (E.D.N.Y. Feb. 9, 2012) ................................ 9n.5

*Sampson v. Medisys Health Network, Inc.*, No. 10-cv-1342 (SJF) (ARL),
2011 WL 579155 (E.D.N.Y. Feb. 8, 2011) .............................................. 15

*Sears v. Likens*, 912 F. 2d 889 (7th Cir. 1990) ............................................ 49

*Sec'y of Labor v. Labbe*, 319 F. App'x 761 (11th Cir. 2008)...................... 18

*Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) .................................... 45

*Shahriar v. Smith & Wollensky Restaurant Group, Inc*., 659 F.3d 234
  (2d Cir. 2011) ........................................................................................ 35

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130
  (2d Cir. 2007) ........................................................................................ 55

*Sirohi v. Trustees of Columbia Univ.*, 162 F.3d 1148, 1998 WL 642463
  (2d Cir. 1998) .................................................................................... 37-38

*Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231
  (S.D.N.Y. 2006)...................................................................................... 41

*Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457
  (E.D.N.Y. 2011) .......................................................... 34, 35, 36n.18

*Stadt v. Fox News Network, LLC*, 779 F. Supp. 2d 312
  (S.D.N.Y. 2010)...................................................................................... 44

*Stark v. Audio Mktg. Solutions, Inc*., No. 4:10 cv 3150,
  2010 WL 3789572 (D. Neb. Sept. 21, 2010) .................................... 18-19

*State of New York v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249
  (2002)...................................................................................................... 44

*Stickle v. SCI Western Mkt. Support Ctr., L.P.,* No. CV 08-083-
  PHX-MHM, 2008 WL 4446539 (D. Ariz. Sept. 30, 2008) ............. 19n.9, 48, 49

*Sud v. Sud*, 211 A.D.2d 423 (1st Dep't 1995) ............................................ 38

*Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187 (9th Cir. 1987) ........... 49

*Tracy v. NVR, Inc.*, No. 04-cv-6541-DGL, 2009 WL 3153150
  (Sept. 30, 2009), *adopted in part*, 667 F. Supp. 2d 244
  (W.D.N.Y. 2009) ................................................................................ 26, 27

*Twombly v. Bell Atl. Corp.*,550 U.S. 544 (2007)........................................ 19n.9, 27

*U.S. v. Brow,* No. 10-1908-cv, 2012 WL 75361
(2d Cir. Jan. 11, 2012) ............................................................ 54-55

*United States Textiles, Inc. v. Anheuser-Busch Cos*., 911 F.2d 1261
(7th Cir. 1990) ....................................................................... 50

*United States v. Greenleaf*, 692 F.2d 182 (1st Cir. 1982) ........................... 49

*United States v. Pacheco-Ortiz*, 889 F.2d 301 (1st Cir. 1989) ................... 49

*Vadino v. A. Valey Eng'rs*, 903 F.2d 253 (3d Cir. 1990)............................ 30n.14

*Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003)........................................ 30

*Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144 (9th Cir. 2000) ......... 36

*Wolman v. Catholic Health Sys. of Long Island, Inc.,* 10-CV-1326 (JS)
(ETB), docket no. 215 (E.D.N.Y. Feb. 16, 2012) .................................. 22, 27, 42

*Wolman v. Catholic Health System of Long Island, Inc.*, No. 10-CV-1326
(JS) (ETB), 2010 WL 5491182 (E.D.N.Y. Dec. 30, 2010).................. 14, 15, 27

*Wood v. TriVita, Inc.*, No. CV-08-0765-PHX-SRB, 2009 WL 2106291
(D. Ariz. June 22, 2009) ........................................................ 27

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
341 F. Supp. 2d 258 (S.D.N.Y.  2004) ...................................... 40

*Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993 (9th Cir. 1987) ........ 31n.15

*Zhong v. August August Corp.*, 498 F. Supp. 2d 625 (S.D.N.Y. 2007)....... 13

**Statutes:**

18 U.S.C. §1341 ........................................................................ 47

18 U.S.C. §1961 ........................................................................ 45

29 U.S.C. §185 ......................................................................... passim

29 U.S.C. §203(r) ...................................................................... 24n.11

29 U.S.C. §206 ......................................................................... 53

29 U.S.C. §207(j) ................................................................ 16

29 U.S.C. §216 ................................................................... 53

29 U.S.C. §216(b) ............................................................... 53

29 U.S.C. §218(a) ............................................................ 35, 36

29 U.S.C. §254(a) ................................................................ 17

29 U.S.C. §255(a) ................................................................ 18

29 U.S.C. §256 ................................................................... 18

29 C.F.R. §541.301(e)(2) ....................................................... 33

29 C.F.R. §778.601 ............................................................... 16

29 C.F.R. §§785.27-785.32 ...................................................... 16

29 C.F.R. §785.47 ................................................................ 16

Fed. R. Civ. P. 8(a) ............................................................. 46

Fed. R. Civ. P. 9(b) ......................................................... <u>passim</u>

Fed. R. Civ. P. 12 ............................................................... 56

Fed. R. Civ. P. 12(b)(6) ..................................................... 13, 19n.9

Fed. R. Civ. P. 12(e) .......................................................... 19n.9

Fed. R. Civ. P. 60 ............................................................. 55n.22

N.Y. Comp. Codes R. & Regs., tit. 10, §405.1(c)(3) ................................ 7

New York Compilation of Codes, Rules and Regulations,
    Part 142, title 12 ......................................................... 28-29

New York Labor Law §190(8) ............................................. 1, 10, 28, 29

New York Labor Law §191 ................................................ 1, 10, 28, 29

New York Labor Law §191 *et seq.* .............................................. 28

New York Labor Law §191(d)(1) ................................................................ 28

New York Labor Law Article 6 ................................................................ 28

New York Labor Law Article 19 ................................................................ 28, 29

**Other Authority:**

U.S. Dep't of Labor, Wage & Hour Div., Opinion No. FLSA2005-15,
　2005 WL 2086804 (Apr. 11, 2005) ............................................................ 25

U.S. Dep't of Labor, Wage & Hour Div., Opinion No. FLSA2005-17NA,
　2005 WL 6219105 (June 14, 2005) ............................................................ 25

www.crainsnewyork.com/article/20110629/FREE/110629871 .................. 7

www.hospitalovertime.com .......................................................... 9n.5

www.nypsystem.org ................................................................ 6

www.nysna.org/news/press/2011/121311.htm, December 13, 2011
　Press Release ................................................................ 5n.2

## STATEMENT OF THE ISSUES

1.    Did the District Court correctly dismiss Plaintiffs' Fair Labor Standards Act ("FLSA") claims where the Complaint did not set forth the number of unpaid hours allegedly worked, what the work was, when the work was done or the applicable rate of pay?

2.    Did the District Court correctly conclude there was no basis to impose liability on the Named Defendants and over 500 other entities as joint employers where Plaintiffs failed to allege any facts regarding their employment by any Defendant?

3.    Did the District Court correctly conclude there was no basis for personal liability of the two individual Defendants where Plaintiffs failed to allege facts to support the conclusion the individuals had operational control over the terms and conditions of Plaintiffs' employment, let alone that of 52,000 employees at 500 other entities claimed to be joint employers?

4.    Did the District Court correctly dismiss Plaintiffs' claim for overtime compensation based on New York Labor Law ("NYLL") sections 190(8) and 191 which address only the frequency of the payment of wages?

5.    Did the District Court correctly hold that the Complaint was deficient because it failed to plead facts showing that Plaintiffs' claims were not precluded by the Labor Management Relations Act ("LMRA"), where the terms

and conditions of Plaintiffs' employment were governed by a collective bargaining agreement ("CBA")?

6.     Did the District Court correctly hold that Plaintiffs' common law claims for unpaid compensation were preempted by section 301 of the LMRA because their compensation was governed by a CBA?

7.     Did the District Court correctly hold that Plaintiffs' common law claims based on the same allegations as their FLSA claims were preempted by the FLSA?

8.     Did the District Court correctly dismiss Plaintiffs' claims for breach of implied and express contract where (a) Plaintiffs failed to allege the essential terms of any contracts, and (b) the alleged contracts consisted of nothing more than a promise to comply with a pre-existing legal duty and therefore lacked consideration?

9.     Did the District Court correctly dismiss Plaintiffs' claim for breach of implied covenant of good faith and fair dealing where the claim was duplicative of their breach of express contract claim?

10.     Did the District Court correctly dismiss Plaintiffs' claims for quantum meruit and unjust enrichment/restitution where (a) the claims were duplicative of Plaintiffs' breach of contract claim; (b) Plaintiffs failed to allege the reasonable value of the services they allegedly provided; and (c) the FLSA

provides the exclusive remedy for any unpaid compensation to which Plaintiffs claim entitlement?

11.    Did the District Court correctly dismiss Plaintiffs' claim for fraud where (a) Plaintiffs did not cite any specific fraudulent statements, identify any alleged speakers, state where or when the alleged fraudulent statements were made or explain why any of Defendants' purported statements were fraudulent, as required by Fed. R. Civ. P. 9(b); and (b) the claim was duplicative of Plaintiffs' contract claim?

12.    Did the District Court correctly dismiss Plaintiffs' claim for negligent misrepresentation where Plaintiffs failed to (a) plead this claim with the specificity required by Fed. R. Civ. P. 9(b), and (b) establish the existence of a special relationship necessary to maintain this claim?

13.    Did the District Court correctly dismiss Plaintiffs' claim for conversion where Plaintiffs sought only to enforce an obligation to pay money, not the return of tangible goods?

14.    Did the District Court correctly dismiss Plaintiffs' "claim" for equitable estoppel seeking to bar Defendants from asserting statute of limitations defenses because no such cause of action exists under New York law?

15.    Did the District Court correctly dismiss Plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO") claim where Plaintiffs failed

to (a) plead a predicate act; (b) allege a pattern of racketeering activity; and (c) allege RICO "enterprise" distinct from the defendants, or that the alleged mail fraud was the proximate cause of their injury?

16.     Did the District Court correctly conclude that Plaintiffs' RICO claim, which was based on an alleged failure to pay overtime, was barred by the FLSA's exclusive enforcement scheme?

17.     Did the District Court correctly deny Plaintiffs leave to amend their RICO and common law claims where an amendment could not remedy the chronic effects in their pleading?

18.     Should this action be reassigned despite Plaintiffs' failure to demonstrate any partiality by the District Judge?

## STATEMENT OF FACTS

Plaintiffs Masahiro Nakahata and Diana Gardocki are professional salaried registered nurses ("RNs") who were employed by The New York and Presbyterian Hospital ("NYPH") pursuant to the terms of a CBA between NYPH and the New York State Nurses Association ("NYSNA").[1] (A 115, ¶¶ 8, 9.)  The 72-page CBA

---

[1] The caption mistakenly lists several individuals as named "Plaintiffs" and a variety of other entities as "Defendants".  Only Mr. Nakahata and Ms. Gardocki are named Plaintiffs and all the other entities listed as "Defendants" were voluntarily dismissed from earlier complaints in this action, either by Plaintiffs' amendment of their first Complaint filed on March 24, 2010 or by Stipulation of the parties.  (A 16, 24 docket entry nos. 39, 149; *see also* Second Circuit docket entry nos. 9, 93.)

- 4 -

sets forth the comprehensive terms and conditions of Plaintiffs' employment with NYPH, including their salaries and salary enhancements, entitlement to meal periods and breaks, and grievance procedures. (A 114, ¶ 5; A 116-253.)[2]

The gravamen of the Complaint is that NYPH and the other defendants maintained three alleged "policies" which resulted in the Plaintiff RNs (and the putative class members) not being paid for unspecified meal periods and breaks through which they allegedly worked, pre- and post-shift work and training and, as a result, being denied "applicable premium pay" in violation of the FLSA, NYLL, RICO and common law.[3]

The Complaint indiscriminately uses the expression "New York-Presbyterian Healthcare System" or "defendants" to refer in blanket fashion to the four Named Defendants as well as so-called "Health Centers" and "Affiliates," which encompass more than **500** entities.[4]  The Complaint does not specify which entity employed the Plaintiffs.   Rather, the Plaintiffs allege that they were

---

[2] The term of the CBA extends to January 2015.  (December 13, 2011 Press Release at  www.nysna.org/news/press/2011/121311.htm; *see also* A 255-333; A 335-376.)

[3] The Complaint purports to represent a widely disparate and unwieldy class of salaried nursing and non-nursing "hourly employees" (A 51, ¶ 83.)

[4] "Health Centers" refers to the Named Defendants' purported "health care facilities and centers" listed in paragraph 19 of the Complaint.  (A 33-37.)  There are more than 250 entities listed.   "Affiliates" refers to the Named Defendants' purported "affiliated health care facilities and centers" listed in paragraph 20 of the Complaint.  (A 37-43.) There are more than 250 additional entities listed.

employed by *all* of the so-called "defendants," without stating a single fact regarding their employment other than they were "employed within this District." (A 48, ¶ 62.)

The Complaint also refers to non-party New York-Presbyterian Healthcare System (the "Healthcare System"), which, in contrast to defendant New York-Presbyterian Healthcare System, Inc. ("System, Inc."), is an unincorporated federation of autonomously operated high-quality hospitals, specialty institutes, and continuing care centers throughout New York, New Jersey and Connecticut. Its members include academic affiliates of Weill Cornell Medical College and Columbia University College of Physicians and Surgeons who collaborate to improve patient care, medical education and research. It offers physicians the opportunity to collaborate on health-related initiatives, offers access to an on-line medical library, and conducts educational programs. Neither NYPH nor System, Inc. employs nor supervises the medical staff of the Healthcare System member institutions. *See* the Healthcare System's website www.nypsystem.org.

Defendant System, Inc. is a "Type B" not-for-profit corporation organized under New York law and is exempt from federal income taxation. (A 78, ¶ 2; A 81-92.) As set forth in its certificate of incorporation, it is organized "exclusively for charitable, religious, educational and scientific purposes." (A 84, FOURTH.) System, Inc. is expressly *not* "authorize[d] . . . to establish, operate or maintain a

hospital or to provide hospital services or health-related services . . . as defined in and covered by Articles 28, 33, 36, 40 and 44, respectively, of the Public Health Law or Article 31 of the Mental Hygiene Law," and it does not do so.  (A 84, THIRD.)  As a matter of law, System, Inc. cannot adopt or approve of hospital operating policies and procedures, including personnel and compensation policies for itself, much less for more than 500 other entities.  N.Y. Comp. Codes R. & Regs., tit. 10, § 405.1(c)(3).  System, Inc. does not have (and never had) any employees.  (A 79, ¶ 3.)

Dr. Pardes is the former President and CEO of NYPH.  (A 115, ¶ 11); www.crainsnewyork.com/article/20110629/FREE/110629871.  The Complaint claims that he is an "employer" based solely on his position and the wholly implausible allegations that he makes "decisions concerning the [employment] policies [that the more than 500 so-called] defendants adopt and the implementation of those policies" for 52,000 persons (A 46, ¶ 46), and "is actively involved in the creation of the illegal policies complained of in this case."  (A 46, ¶¶ 47, 50.)  The Complaint does not contain a single fact identifying any of the employment policies or employment decisions Dr. Pardes allegedly made or implemented across this agglomeration of more than 500 autonomous entities. Indeed, the bulk of the allegations pertaining to him have nothing to do with

Plaintiffs' compensation or the FLSA or NYLL.  (*See, e.g.,* A 45-46,  ¶¶ 43-45, 49 (second sentence).)

Plaintiffs allege that Wayne Osten is the Senior Vice President and Director for New York-Presbyterian Healthcare System (which, as discussed previously, is not even an entity).  (A 46, ¶ 51.)  Based on nothing more than his title, the Complaint alleges that Mr. Osten is an "employer." (A 48, ¶ 61.)  There are, however, no facts alleged supporting this conclusion.  While the Complaint claims that "[i]n concert with others, Mr. Osten has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training and payroll" (A 47, ¶ 59), and that he "is actively [sic] in creating and/or maintaining the illegal [employment] policies complained of in this case" (A 48, ¶ 60), the Complaint does not identify one specific employment policy that Mr. Osten allegedly created.  Nor does the Complaint set forth Mr. Osten's alleged role in creating employment policies covering more than 500 entities, or the decisions he allegedly made relevant to Plaintiffs' and some 52,000 others' wage and hour claims.

### SUMMARY OF ARGUMENT

Judge Crotty was neither the first nor the last District Judge to dismiss plaintiffs' form complaint, which Plaintiffs' counsel have recycled again and again with the same uncured deficiencies in their campaign against hospitals across the

country.  Simply put, Judge Crotty held that a "one size fits all" complaint does not fulfill the pleading requirements in class action wage and hour litigation.[5]

*First*, Plaintiffs' overtime claims under the FLSA allege nothing more than they "regularly worked hours both under and in excess of forty per week and were not paid for all of those hours."  This claim provides insufficient detail to plausibly allege a violation of the FLSA, such as the type of work performed, how long they engaged in it, their scheduled hours, or whether they are even entitled to overtime.

Equally deficient are Plaintiffs' allegations as to which entity employed them.  The Complaint implausibly asserts in conclusory fashion that the Named Defendants and the more than 500 so-called "defendants" are "the employer (single, joint or otherwise [sic])" of Plaintiffs.  Despite notice of their errors and multiple opportunities to cure, Plaintiffs' counsel failed to plead even the most basic, readily ascertainable facts establishing Plaintiffs' employment with any entity.

Nor does the Complaint plead any factual basis for imposing liability on the two individual Defendants, and the claim that these two individuals controlled all aspects of the day-to-day employment activities of the more than 500 so-called

---

[5] *See* www.hospitalovertime.com which details Plaintiffs' counsel's nationwide litigations against the healthcare industry; Report & Recommendation in *Sampson v. Medisys Health Network, Inc., et al.*, No. 2:10-cv-01342-SFJ-ARL, docket no. 154 (E.D.N.Y. Feb. 9, 2012) (which details many of these litigations and addresses some of the same issues as here.)

- 9 -

"defendant" entities which are alleged to employ more than 52,000 persons in three states, is both insufficient and implausible.

*Second*, the District Court correctly dismissed Plaintiffs' NYLL claims based on sections 190(8) and 191, which have nothing to do with the payment of overtime.

*Third*, Plaintiffs assert a litany of claims with the same alleged factual predicate: they did not receive compensation for all hours worked that should have been calculated at "applicable premium pay rates." Determining whether Plaintiffs were adequately paid--and the remedy to which they might be entitled if they were not--requires interpretation of many interlocking provisions of the CBA that embodied all legal requirements concerning the payment of such wages, including rates of pay and "premiums," work schedules, and other terms of employment. The District Court correctly held that Plaintiffs' common law claims are preempted by the Labor Management Relations Act, 29 U.S.C. § 185 ("section 301"), and that the FLSA and NYLL claims might be preempted, but that Plaintiffs had not pleaded enough information to make a determination.

*Fourth*, to the extent Plaintiffs' common law claims are not preempted by section 301, they are preempted by the FLSA. The basis for the common law claims is Defendants' alleged failure to compensate the Plaintiffs and class members for all time worked including applicable premium pay, which is the

identical basis Plaintiffs use to support their FLSA claims.  Since the allegations are the same and Plaintiffs acknowledge the FLSA does not provide for a recovery of unpaid straight time, these common claims must seek unpaid overtime.  Claims for unpaid overtime are preempted by the FLSA's exclusive remedial scheme.

*Fifth*, the District Court correctly dismissed Plaintiffs' breach of implied oral and express oral contract, breach of implied covenant of good faith and fair dealing, quantum meruit, unjust enrichment/restitution, fraud, negligent misrepresentation, conversion and estoppel claims as either insufficiently pleaded or improperly duplicative of other statutory or common law remedies.

*Sixth*, the District Court correctly dismissed Plaintiffs' RICO claim, as nothing more than a claim for unpaid overtime under the FLSA and thus precluded.  Moreover, the Complaint's conclusory allegations failed to (a) plead mail fraud with the specificity required by Fed. R. Civ. P. 9(b); (b) inform each defendant of the nature of its alleged participation in the fraud; (c) establish how the mailing substantially furthered, as opposed to disclosing, the alleged scheme; (d) establish that Plaintiffs have standing to assert a RICO claim; or (e) allege the existence of the RICO enterprise distinct from Defendants they seek to hold liable.

*Seventh*, the District Court did not abuse its discretion in denying Plaintiffs leave to amend their RICO and common law claims since the defects in such claims were incapable of cure.

## ARGUMENT

## POINT I

### THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' FLSA CLAIMS

**A.     Plaintiffs Failed to Adequately Plead that They Worked Overtime**

Plaintiffs assert that to plead a claim for violation of the FLSA overtime provisions, they must "indicate" that they worked in excess of forty hours per week and were not paid for that time.   (Plaintiffs' Brief ("Brief"), 23.)  This, however, they fail to do.  They allege only, and nothing more than, they "regularly worked hours *both under and in excess of* forty per week and were not paid for all of those hours."[6]  (A 60, ¶ 146 (emphasis added); *see also* A 62, ¶ 161; A 64, ¶ 175.)  This is not sufficient, and the District Court correctly dismissed this claim. (SPA 8-9.)

---

[6]   Plaintiffs erroneously assert that they alleged that "Defendants automatically deduct half an hour of time every day from each hourly employees pay for a meal break."  (Brief, 14; 24.)  That allegation appears nowhere in the Complaint. Rather, the relevant paragraphs state only that  "defendants' timekeeping system automatically deducts *time* from employees' paychecks each day for meals, breaks and other reasons."  (A 19-20, ¶ 66; *see also* A 49-51, ¶¶ 69-86.) (emphasis added.) Similarly, Plaintiffs' assertion that they alleged that they "often worked more than 40 hours per week" appears nowhere in the Complaint, nor in paragraph 161 of the Complaint which they cite to support this assertion.  (Brief, 24.)

To plead a valid overtime claim under the FLSA, a complaint must set forth, among other things, the approximate number of unpaid hours allegedly worked by Plaintiffs. *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007). " '[S]imply stating that [a plaintiff] w[as] not paid for overtime work' " does not suffice. *Id.* at 630 (citation omitted). Rather, "where the plaintiff alleges violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least approximately, allege the hours worked for which these wages were not received." *Id.* at 628. In *Zhong*, the court dismissed the overtime claim pursuant to Fed. R. Civ. P. 12(b)(6) because the complaint lacked these allegations. *Id.* at 630.

Plaintiffs fail to allege any details such as what positions Plaintiffs held; in which hospital, Health Center or Affiliate they worked; what period of time they were employed; whether they were full-time or part-time employees; the hours Plaintiffs were scheduled to work or the hours they in fact did work; the work Plaintiffs personally performed for which they were not compensated, when or where this occurred, how often, or the circumstances under which it occurred; the duration of the meal and/or break periods at issue; and the amount of overtime, if any, allegedly worked.

In *Manning v. Boston Medical Center Corp.*, No. Civ. A. 09-11463-RWZ, 2011 WL 796505, at *1-2 (D. Mass. Feb. 28, 2011), the court dismissed similar FLSA claims brought by the same counsel as here:

> [t]he core of the complaint is the FLSA claim for unpaid wages, premised on general allegations of unpaid work during lunch breaks, before and after shifts, and at mandatory trainings. But the complaint does not allege, even in the most approximate terms, the dates on which each of the named plaintiffs worked during lunch breaks, the aggregate time of those lunch breaks, and the amount of unpaid wages. Such allegations are similarly lacking for the pre- and post-shift theory of liability, and the complaint fails to identify a single unpaid training which any of the named plaintiffs attended.
>
> The Federal Rules of Civil Procedure do not require fact pleading, but *Iqbal* and *Twombly* make clear that 25 pages of boilerplate language will not suffice. There is not a single specific allegation anywhere in the complaint of unpaid work that named plaintiffs performed. The only date to be found is in the signature block of plaintiffs' counsel. The court cannot draw a reasonable inference of liability from this aggregation of conclusory statements and general allegations. The complaint fails to state any claim.

(Citation and footnote omitted.)

Similarly, in *Wolman v. Catholic Health System of Long Island, Inc.*, No. 10-CV-1326 (JS) (ETB), 2010 WL 5491182 (E.D.N.Y. Dec. 30, 2010), the court determined that plaintiffs' claim for failure to compensate employees (asserted by the same counsel as here) did not properly plead an FLSA overtime claim because, among other things, it did "not indicate whether Plaintiffs worked

full-time, part-time, or somewhere in-between" and instead "allege[d] only, in a vague and conclusory fashion, that Plaintiffs work 'both under and in excess of forty hours per week.' " *Wolman*, 2010 WL 5491182, at *2, 4. Similar, if not identical, deficiencies exist in many other cases filed by Plaintiffs' counsel resulting in FLSA claims being dismissed. *See, e.g., Pruell v. Caritas Christi*, No. 09-11466-GAO, 2010 WL 3789318, at *1-4 (D. Mass. Sept. 27, 2010); *Sampson v. Medisys Health Network, Inc*., No. 10-cv-1342 (SJF) (ARL), 2011 WL 579155, at *4 (E.D.N.Y. Feb. 8, 2011); *DeSilva v. Northshore-Long Island Jewish Health Sys., Inc*., 770 F. Supp. 2d 497, 507-511 (E.D.N.Y. 2011). *See also Mell v. GNC Corp.,* No. Civ. A. 10-945, 2010 WL 4668966, at *7 (W.D. Pa. Nov. 9, 2010); *Acosta v. Yale Club of N.Y.C.,* No. 94 Civ. 0888 (KTD), 1995 WL 600873, at *4 (S.D.N.Y. Oct. 12, 1995).

In light of these deficiencies, none of the broad allegations Plaintiffs make is sufficient to plausibly conclude that Plaintiffs are entitled to overtime under the FLSA.[7]

First, even if Plaintiffs were entitled to overtime, which, as salaried, professional registered nurses they are not, the allegation that they "regularly worked hours both under and in excess of forty per week" is meaningless. In

---

[7] This Court should disregard Plaintiffs' essay (Brief, 30, n.6) on the alleged similarity of organizational structure in the hospital industry; there is no support in the record for it other than the parallels in the four form complaints here.

the healthcare industry employers are expressly allowed to alter by agreement the statutory workweek converting overtime for all hours in excess of 40 to all hours in excess of 8 in any day or 80 in a given two week period.  29 U.S.C. § 207(j); 29 C.F.R. § 778.601.  A permissible version of this rule is contained in the CBA (A 148, § 6.03), and therefore the fact that either named Plaintiff may have worked more than 40 hours in any given workweek does not necessarily implicate the FLSA.

Second, Plaintiffs do not specify what activities they claim to have undertaken during their meal breaks or for how long.  An employee may undertake certain *de minimus* activities during a meal beak without rendering the entire meal period compensable.  *See* 29 C.F.R. § 785.47; *see also Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).

Third, Plaintiffs' assertion that they attended "compensable training programs," without specifying the nature of this training, when and where it occurred, or the voluntariness or job-relatedness of the training programs, is insufficient to establish a claim for overtime compensation.  Not all "training" is compensable work; whether employees must be paid for training depends on the facts and circumstances of the particular training.  *See* 29 C.F.R. §§ 785.27-785.32.

Fourth, with absolutely no information about what Plaintiffs claim to have been doing before and after their scheduled shifts and whether such tasks can be

considered "principal activities," there is no basis to conclude that they are owed additional compensation for such work. Preliminary and postliminary activities by definition are excluded from compensable work; only work that constitutes a "principal activity" is compensable. *See* 29 U.S.C. § 254(a).

Even if the Court were to assume the unspecified work were compensable, Plaintiffs make no allegations about their working schedules or even whether they were engaged on a full- or part-time basis or for how long they performed these activities. A Court certainly cannot leap from the assumption that Plaintiffs performed compensable work on these occasions to a conclusion that they are entitled to overtime under the FLSA.

Plaintiffs cite more than twenty paragraphs from their Complaint in an attempt to infer the "plausibility" of their FLSA claim, but none substitutes for detailed and specific pleading. (Brief, 25-27.) While Plaintiffs claim that there is "no mystery" as to the work performed, one wonders, then, why they did not provide specifics of such work in the Complaint. (Brief, 26.) Their contention that such specificity is unnecessary because they have alleged that they were engaged in activities described as their "duties," is as meaningless as Plaintiffs' assertion that their off-the-clock activities constitute compensable "work." Plaintiffs' lack of specificity is compounded by that fact that Gardocki's employment terminated in January 2010, and Nakahata has not worked at NYPH since June 2007 and any

non-willful FLSA claims are time barred for him. (A 115, ¶¶ 8, 9); 29 U.S.C. §§ 255(a), 256.[8]

Even where courts have not required specific information about the number of hours plaintiffs claim to have worked, plaintiffs have consistently been required to plead more factual information than Plaintiffs do here. *See, e.g., Nicholson v. UTI Worldwide, Inc*., No. 3:09-cv-722 (JPG) (DGW), 2010 WL 551551 (S.D. Ill. Feb. 12, 2010) (description of specific tasks performed); *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763-64 (11th Cir. 2008) (complaint established that defendant failed to compensate employees who worked in excess of 40 hours a week); *Martinez v. Regency Janitorial Servs., Inc*., No. 2:11-cv-259 (AEG), 2011 WL 4374458, at *3-4 (E.D. Wis. Sept. 19, 2011) (as a whole plaintiffs alleged that they worked in excess of 40 hours per week); *Hofmann v. Aspen Dental Mgmt., Inc*., No. 3:10-cv-37-SEB-WGH, 2011 WL 3902773, at *3 (S.D. Ind. Sept. 6, 2011); *In re Bank of Am. Wage and Hour Employment Litig*., No. 10-MD-2138-JWL, 2010 WL 4180567, at *1 (D. Kan. Oct. 20, 2010); *Stark v. Audio Mktg. Solutions, Inc*.,

---

[8] Even if Plaintiffs had sufficiently pleaded their FLSA claims, which they have not, the so-called "Policies" they identify do not violate the FLSA and do not cure the defects in the Complaint. *See, e.g., Camesi v. University of Pittsburgh Medical Center*, No. 09-85J, 2011 WL 6372873, at *10 (W.D. Pa. Dec. 20, 2011).

No. 4:10 cv 3150, 2010 WL 3789572, at *4 (D. Neb. Sept. 21, 2010); *Acho v. Cort*,

No. C. 09-00157 MHP, 2009 WL 3562472, at *2 (N.D. Cal. Oct. 27, 2009).[9]

## B. Plaintiffs Did Not Plausibly Allege They Were Employed by Defendants

This Court has made it clear that only a person or entity that is in "reality"

an "employer" is an employer under the FLSA or NYLL. *Barfield v. N.Y.C.*

---

[9] The remaining cases Plaintiffs cite similarly fail to support their position. *See Allen v. City of Chicago,* No. 10c3183, 2011 WL 941383 (N.D. Ill. Mar. 15, 2011) (plaintiffs described work performed and work hours entitling them to overtime pay); *Anish v. Nat'l Sec. Corp.*, No. 10-80330-CIV-MARRA, 2010 WL 4065433, at *3 (S.D. Fla. Oct. 15, 2010) (denying motion to dismiss FLSA claims but ordering plaintiff to provide more definite statement pursuant to Fed. R. Civ. P. 12(e) containing dates and location of employment); *Hellenberg v. Integrated Deicing Servs. LLC*, No. 10-cv-11364, 2011 WL 317733, at * 2 (E.D. Mich. Feb. 1, 2011) (complaint included specific allegations concerning readjustment of employees' time on defendant's computer system); *Moreno v. Ferretti Grp. of Am. LLC*, No. 10-24507-CIV, 2011 WL 4499031, at *2 (S.D. Fla. Sept. 27, 2011) (complaint alleged plaintiff's job position and dates of employment); *Arnold v. DirecTV, Inc.,* No. 4:10 cv 00352 AGF, 2011 WL 839636, at *6 (E.D. Mo. Mar. 7, 2011) (complaint adequately alleged employment relationship by specifying that plaintiffs were required to wear defendant's uniforms and display defendant's logo on their vehicles). The other pre-*Iqbal* cases on which Plaintiffs rely likewise do not help them. *Gordon v. Kaleida Health*, No. 08-cv-378S, 2008 WL 5114217 (W.D.N.Y. Nov. 25, 2008), *amended by*, No. 08-CV-378S, 2009 WL 4042929 (W.D.N.Y. Nov. 19, 2009) and *Hinterberger v. Catholic Health*, No. 08-cv-380S, 2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008) were decided under the *Twombly v. Bell Atl. Corp.,*550 U.S. 544 (2007) ("*Twombly*") standard without the benefit of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ("*Iqbal*"). Although the court acknowledged that it must not credit " 'conclusory allegations or legal conclusions masquerading as factual conclusions,' " it based its decision on "facts" that are the sort of legal conclusions that do not merit credence. *Gordon*, 2008 WL 5114217, at *2-3 (citation omitted); *Hinterberger*, 2008 WL 5114258, at *2; *Stickle v. SciWestern Mkt. Support Ctr., L.P.*, No. cv 08083 PHXMLM, 2008 WL 4446539, at *4 (D. Ariz. Sept. 30, 2008) (Rule 12(b)(6) motion to dismiss was not directed to requirements for pleading a substantive claim under the FLSA).

*Health and Hosp. Corp*., 537 F.3d 132, 141 (2d Cir. 2008) (the "determination of whether an employer-employee relationship exists for purposes of the FLSA [or NYLL] should be grounded in 'economic reality.'"); *see also Goldberg v. Whitaker House Co-Op., Inc*., 366 U.S. 28, 33 (1961). An employment relationship is determined by facts, not conclusions.

The "economic reality" test essentially examines whether a defendant has "formal" or "functional" control over the employment of an individual. *See, e.g., Barfield*, 537 F.3d at 143 (citing *Ling Nan Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 71-72 (2d Cir. 2003)); *Ling Nan Zheng v. Liberty Apparel Co.,* 617 F.3d 182 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 2879 (2011). No single factor in either test is determinative. *Herman v. RSR Sec. Servs. Ltd*., 172 F.3d 132, 139 (2d Cir. 1999).

Here, the Complaint does not identify which of the more than 500 entities identified as "defendants" actually employed Plaintiffs, and does not even specifically allege that System, Inc. or the two individual defendants were their employer. Paragraphs 32 through 36 of the Complaint merely echo the FLSA, and allege that the "active wrongdoer" was simply the generic "health system." (Brief, 34.) Plaintiffs do not allege who at System, Inc. hired or could fire them (or any other class member, for that matter). There are no allegations as to who at System, Inc. supervised or controlled their work schedules or conditions of employment.

The Complaint is also silent as to who determined Plaintiffs' rate and method of compensation, or who maintained their employment records, or who paid them. The conclusory allegation that each of the more than 500 entities listed in paragraphs 19 and 20--from Park Slope Chiropractic, P.C. to the New Jersey hospital gift shop--simultaneously and jointly employ 52,000 class members is facially implausible and legally insufficient.

In *Manning*, the court dismissed virtually identical allegations stating:

> Plaintiffs' complaint runs to 25 pages and 158 paragraphs, yet it lacks even the most basic information about their claims. Their names appear in the caption, the introductory paragraph, and a paragraph titled "Named Plaintiffs" which says only that they were employees under the FLSA who reside and were employed within the district (Compl. ¶ 75). Which defendant did they work for? The complaint includes the vague allegation that the 20 defendants "are the employer (single, joint or otherwise) of the Plaintiffs and Class Members and/or alter egos of each other" (*id*. at ¶ 25), which is no answer at all.

*Manning*, 2011 WL 796505, at *1.

*Cavallaro v. UMass Mem'l Health Care Inc*., No. 09-40152-FDS, 2011 WL 2295023 (D. Mass. June 8, 2011), another case brought by Plaintiffs' counsel, is likewise on point. The court found, *inter alia,* that plaintiffs had "not alleged that any of the corporate entities make decisions regarding their compensation or method of employment. And they have not alleged that their employment records are maintained by any of the defendants." *Id.*, 2011 WL 2295023, at *3-4.

Accordingly, the court held that "[i]n light of their failure to allege any specific facts in support of a theory of joint employment, there is no plausible basis for an inference that all of the defendants caused the alleged FLSA violations that plaintiffs suffered." *Id*. at *4. *See also Wolman v. Catholic Health Sys. of Long Island, Inc.,* 10-CV-1326 (JS) (ETB), docket no. 215, at 13-15 (E.D.N.Y. Feb. 16, 2012); *Davis v. Abington Mem'l Hosp.,* ____ F. Supp. 2d _____, 2011 WL 4018106, at * 3 (E.D. Pa. Sept. 8, 2011) (court stated in another case by Plaintiffs' counsel that it cannot "embark on a joint-employer analysis" in the absence of "facts alleging who exercised primary control over Defendants" where plaintiffs "never allege for which of the 86 entities they actually worked or the nature of the relationship between those entities"); *Ping Chen v. Domino's Pizza, LLC*, Civ. A. No. 09-107 (JAP), 2009 WL 3379946, at *4 (D.N.J. Oct. 16, 2009); *Leber v. Berkley Vacation Resorts, Inc*., No. 2:08-CV-01752-PMP-PA, 2009 WL 2252517, at *5 (D. Nev. July 27, 2009) (the fact that all defendants conduct business in the same industry and utilize similar compensation schemes is insufficient to establish joint employer status); *Hibbs-Rines v. Seagate Techs, LLC*, No. C 08-05430-SI, 2009 WL 513496, at *5 (N.D. Cal. Mar. 2, 2009) ("While plaintiff is not required to conclusively establish that defendants were her joint employers at the pleading stage, plaintiff must at least allege *some* facts in support of this legal conclusion.")

The Complaint's allegations are even more implausible in this case given the undisputed facts that: (1) according to its charter and as a matter of law, System, Inc. cannot operate a hospital; (2) System, Inc. does not operate "health care facilities and centers," or "affiliated health care facilities and centers," let alone more than 500 of them; (3) System, Inc. is not "engaged in the operation of hospitals and/or the care of the sick," nor may it; (4) Plaintiffs were employed as professional salaried registered nurses and since System, Inc. is not a hospital and does not provide healthcare services, these individuals could not have had any employment relationship with it; and (5) as shown by its charter, System, Inc. is a "Type B" not-for-profit corporation and therefore is not "owned" by anyone, does not generate "profits" from the operation of medical facilities, and does not "engage in a joint venture . . . established through [its] conduct in sharing the profits and losses." (A 33-43, ¶¶ 19, 20, 23; A 43, 44, ¶¶ 22, 28; A 114-115, ¶¶ 5, 8, 9; A 125; § 1; A 148-151, § 6; A 180-181, Schedule A; A 78, ¶ 2; A 81-92; A 44-45, ¶¶ 31, 38.)[10]

---

[10] The allegations in the Complaint that System, Inc. employed the named Plaintiffs and other members of the putative class are further belied by the fact that none of the almost 150 "party plaintiffs" who sought to become part of this action (including the named Plaintiffs) specifically identified any particular "defendant" as that person's employer. (A 13-23, 25, Docket nos. 2-5, 7, 9-15, 18-25, 27-28, 30-31, 33-35, 38, 40, 49-50, 89, 97, 121-122, 124, 137, 159.)

Plaintiffs nonetheless argue that their conclusory allegations should be evaluated against the "single employer" test drawn from other legal contexts instead of the factors identified in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), *Barfield, Zheng* and *Herman*.[11]    (Brief, 31-32.) Plaintiffs cite no authority from this Circuit in which that test has been used in an FLSA overtime action, *see, e.g., In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 340, n.25 (W.D. Pa. 2010) ("[t]he court is unaware of any decisions expanding the 'single employer' test to FLSA overtime claims"), and instead rely on distinguishable and unpersuasive authorities.  *See, e.g., Anderson v. Theriault Tree Harvesting, Inc.*, No. 08-330-B-W, 2010 WL 323530 (D. Me. Jan. 20, 2010) (court incorrectly applied the integrated enterprise test based on general language in *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991), stating that "employer" is defined broadly under the FLSA; however, the court in *Dole* applied the FLSA's economic realities test); *Chao v. A-One Med. Servs. Inc.,* 346 F.3d 908, 917 (9th Cir. 2003) (the court recognized that

---

[11] Plaintiffs alleged that the various "defendants" are "joint employers" due to their participation in the New York-Presbyterian Healthcare System, which Plaintiffs style in conclusory fashion as an "integrated enterprise" and/or "joint venture."  (A 32-45, ¶¶ 18-40.)   Courts have rejected the theory that entities comprising an "enterprise" that give rise to FLSA coverage, should be jointly and severally liable to pay wages of another entity's employees solely because they are members of the "enterprise,"  *see* 29 U.S.C. § 203(r); *Cornell v. CF Ctr., LLC*, 410 F. App'x 265, 267 (11th Cir. 2011) (citation omitted); *Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092 (NRB), 2007 WL 4358456, at *4 n.3 (S.D.N.Y. Dec. 10, 2007).

whether two entities constitute a single "enterprise" for jurisdictional coverage under the FLSA is separate from whether they are liable as joint employers, which is the test for liability under the FLSA); U.S. Dep't of Labor, Wage & Hour Div., Opinion No. FLSA2005-17NA, 2005 WL 6219105 (June 14, 2005) and U.S. Dep't of Labor, Wage & Hour Div., Opinion No. FLSA2005-15, 2005 WL 2086804 (Apr. 11, 2005) (neither opinion letter, nor regulation they cite, address the factors identified in *Barfield* and the facts established that the employee actually worked for two employers during the same week which were owned in whole or in part by the same entities).[12]

The Court, however, need not resolve this issue. Plaintiffs' generic "single employer" allegations do not suffice to meet the requirements of the "single employer" test. (A 44, ¶¶ 30-31.) For example, the conclusory and generic allegation that the "defendants" share common management and "have common ownership," does not suffice. Plaintiffs must, but do not, identify the individuals who allegedly control the labor relations policies of the defendants. (*Id*.) Moreover, the Complaint does not (nor could it) identify any person who allegedly shares management of the more than 500 "defendant" entities, nor does the Complaint identify these alleged managers' titles or duties. (*Id., ¶* 30.) In fact,

---

[12] Indeed, courts have rejected the joint employment standard set forth in this 2005 opinion letter. *See, e.g., In re Enterprise Rent-A-Car Wage & Hour Emp't. Practices Litig*., 735 F. Supp. 2d 277, 340 n.25 (W.D. Pa. 2010).

Plaintiffs do not in any way indicate the manner in which the alleged shared management of the over 500 "defendants" functions. (*Id.*)

## C. Plaintiffs' Conclusory Allegations Are Insufficient to Establish that Dr. Pardes and Mr. Osten Are "Employers"

Pursuant to this Court's economic reality test, individual officers of substantial corporations are not deemed employers of that corporation's employees under the FLSA. *Herman*, 172 F.3d at 139. Individual officers or directors of the corporation may only be "deemed employers under the FLSA where the individual has overall *operational control* of … the employees' salaries and makes hiring decisions." *Tracy v. NVR, Inc.*, No. 04-cv-6541-DGL, 2009 WL 3153150, at *4 (Sept. 30, 2009), *adopted in part*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) (internal quotation marks and citations omitted). "[B]are allegations of an individual's control over employee-plaintiffs that are based solely upon the individual's job title and presumed duties are insufficient to establish that the individual is an 'employer' under [*Herman*, 172 F.3d 132]'s economic reality test." *Tracy*, 667 F. Supp. 2d at 247 (citation omitted); *see also Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474 (WK), 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001). Even more factual substantiation is required to deem an executive the "employer" of more than 500 other entities' employees spread over three states as the Complaint here sweepingly alleges.

Plaintiffs' boilerplate allegations regarding Dr. Pardes and Mr. Osten simply fail to pass muster under *Iqbal* and *Twombly*.  *Tracy*, 667 F. Supp. 2d at 247.  They are nothing more than "a formulaic recitation of the elements of a cause of action" and are insufficient to raise plaintiffs' right to relief "above the speculative level" with respect to that individual's liability as an employer under the FLSA. *Twombly*, 550 U.S. at 555 (citations omitted); *Iqbal*, 129 S. Ct. at 1949; *Tracy*, 2009 WL 3153150, at *4 (citation omitted); *see also Gray v. Powers*, No. 10-20808, Document No. 00511771680, at 9-10 (5th Cir. Feb. 29. 2012) ("[w]e decline to adopt a rule that would potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company."); *Wolman,* 10-cv-13261, docket no. 215 at 16-18; *Cavallaro v. UMass. Mem'l Health Care Inc.,* No. Civ. A. 09-40152-FDS, 2010 WL 3609535, at *5-6 (D. Mass. July 2, 2010); *Herman*, 172 F.3d at 139; *Bravo*, 2001 WL 314622, at *2; *Wood v. TriVita, Inc.*, No. CV-08-0765-PHX-SRB, 2009 WL 2106291, at *3-4 (D. Ariz. June 22, 2009).

## POINT II

### THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' NYLL CLAIMS

Contrary to Plaintiffs' assertion (Brief, 37), the only two sections that the Complaint cites are "N.Y. Lab. Law § 190(8)" and "N.Y. Lab. Law § 191 *et seq*."

(A 68, ¶ 201.)    Neither section contains a requirement that an employer pay overtime, which is what Plaintiffs seek in the Complaint.  Rather, Section 190(8) merely defines the term "week" for purposes of section 191.    Section 191 addresses the frequency with which employees are to be paid, but creates no obligation with respect to wages over which the parties dispute the employee's entitlement.    NYLL § 191(d)(1).   The District Court correctly dismissed this claim.  (SPA 8.)  *See also Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 368 (2011) (citing NYLL § 191(1)(d)); *Hinterberger v. Catholic Health Sys.*, No. 1:08-cv-00952-WMS, docket no. 34, at p. 19 (W.D.N.Y. Jan. 17, 2012); *O'Rourke v. Carmen M. Pariso, Inc.*, 501 F. Supp. 2d 445, 448 n.2 (W.D.N.Y. 2007); *Jara v. Strong Steel Door, Inc.*, 120 Misc. 3d 1135(A) (N.Y. Sup. Ct. Kings County 2008).

In *Gordon v. Kaleida Health*, No. 08-cv-378S, 2009 WL 4042929, at *4 (W.D.N.Y. Nov. 19, 2009), the court held that "[i]f the employer fails to make timely payment, an employee can seek to recover unpaid or underpaid wages (article six)."   Article 6 is the NYLL article containing sections 190(8) and 191 *et seq.* relied on by Plaintiffs here; however, Plaintiffs do not allege a failure to make *timely* payment of wages.  The *Gordon* court went on to say that an employee can seek to recover for "unpaid overtime for hours worked in excess of 40 per week" pursuant to NYLL Article 19 and Part 142 of title 12 of the New York Compilation

of Codes, Rules and Regulations.  *Id.*  That is what Plaintiffs complain of here, yet those statutory and regulatory provisions are not cited anywhere in the Complaint, and no amount of contorted reasoning can create what is not there. None of the cases cited by Plaintiffs based a claim for overtime on NYLL §§ 190(8) and 191, as Plaintiffs do here, but rather on Article 19 and/or Title 12, Part 142.  (Brief, 37-38.)[13]

## POINT III

### THE DISTRICT COURT CORRECTLY RULED THAT PLAINTIFFS' CLAIMS COULD BE OR WERE BARRED BY SECTION 301

Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable consistent resolution of labor-management disputes."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988).  Therefore, section 301 preemption is appropriate when resolution of a claim under federal or state statutes is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

---

[13] Even if it is determined that Plaintiffs' NYLL claims were sufficiently identified, they nonetheless fail because (1) Plaintiffs have not sufficiently pleaded those claims, *see* Point I; and (2) even if they did, they are preempted by section 301, *see* Point III.

Due to deficiencies in the Complaint, the District Court stopped short of finding that Plaintiffs' FLSA and NYLL claims were barred by section 301. Rather, the District Court correctly ruled that preemption and preclusion are appropriate "[i]f any of the alleged violations hinges on the collective bargaining agreements' definition of the terms of employment. . . ." (SPA 9.) *See also Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003). [14] Because the District Court granted Plaintiffs leave to replead, and Plaintiffs have commenced a new action that includes allegations regarding the applicable CBA, this issue is not ripe for decision.

Since each common law claim is premised on the *contractual employment relationship* between Plaintiffs and NYPH, NYPH's liability will be determined by the terms of the CBAs (the only contract in this case) and preempted by section

---

[14] While CBA terms that are affirmatively inconsistent with the FLSA's minimum requirements are unlawful and without force, *see Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 264-65 (3d Cir. 1990), courts examining the intersection of the FLSA and Section 301 have stated that the FLSA "contains no language suggesting that an action filed [under the FLSA] would be an appropriate vehicle for the interpretation of a disputed provision of the collective bargaining agreement." *Id*. at 265; *see also Martin v. Lake County Sewer Co.*, 269 F.3d 673, 679 (6th Cir. 2001) (endorsing *Vadino*, stating that the "holding appears to us to be a reasonable accommodation of both statutory schemes where the analysis of a wage claim requires an interpretation of the underlying CBA"). With precluded claims the Plaintiffs must simply pursue them in accordance with the terms of the LMRA. *Id*. at 264-65; *see also Elswick v. Daniels Elec. Inc.*, 787 F. Supp. 2d 443, 451 (S.D. W. Va. 2011) (plaintiff's claim "is subject to the procedural requirements of [the LMRA], including the requirement that an employee exhaust all remedies set forth in the bargaining agreement").

301.[15]  *Levy v. Verizon Info. Servs.*, 498 F. Supp. 2d 586, 596 (E.D.N.Y. 2007) (when the right is entirely a creature of contract and has no corresponding basis in the law, "then the claim is preempted, and the analysis ends there"); *Hart v. Verizon Commc'n, Inc*., No. Civ. A 03-11811-RWZ, 2004 WL 438786, at *2 (D. Mass. Mar. 9, 2004).[16]

Specifically, each common law claim alleges that Plaintiffs were not paid "applicable premium pay" (A 31-32, 48, 51-54, 61, 63, 64, 66 ¶¶ 10, 65, 85, 89, 93, 100, 104, 155, 157, 160, 167, 172, 176, 177, 182, 187, 188) "for time. . . worked," including during meal and break periods, training time, and pre- and post-shift. A 60, ¶ 147; *see also* A 62, 64, 66 ¶¶ 162, 167, 185, 188.   As detailed below, each of these topics is covered by the CBA.

The CBA provides that "[f]or the purposes of determining application of an employee's regular compensation rate, the employee's normal workday will be

---

[15]  Plaintiffs cite *Caterpillar Inc. v. Williams,* 482 U.S. 386 (1987) for the proposition that Plaintiffs may have claims based on contracts independent of the CBA.  (Brief, 44-45.)   In *Caterpillar*, the Court addressed a situation in which the plaintiff's alleged contract concerned a position not then covered by a CBA. 482 U.S. at 388-389, 394-95.  The plaintiff was later demoted to a bargaining unit position and sought to enforce a provision of his individual contract that dealt with the subjects *not* addressed in the CBA.  *Id.* at 388-389, 395 n.9.  The unique facts of *Caterpillar* are not present here.  Plaintiffs in this case were covered by CBAs during their entire employment and nothing else.  *See Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 998-99 (9th Cir. 1987).

[16]  To the extent the Court analyzes whether the FLSA and NYLL are in fact precluded or preempted the analysis pertaining to the common law claims applies and the result is the same.

seven and one-half (7½) consecutive work hours, excluding any scheduled meal period." (A 138, § 5.01.)  The CBA further provides that "[f]or the purposes of determining application of an employee's regular compensation rate, the employee's normal work schedule will be seventy-five (75) hours in fourteen (14) days in a biweekly period, and the employee will have four (4) days off in each biweekly period."  (A 138, § 5.02.)  The CBA also establishes the rules applicable to rest breaks, meal breaks and training.  Specifically, Section 7 provides that "[a]n employee working a full shift shall be entitled to two (2) rest periods of fifteen (15) minutes each in each working day, or a one-half (1/2) hour break.  This time cannot be taken at the end of a shift.  An employee who works at least a full half (1/2) workday shall be entitled to one (1) such fifteen (15) minute rest period."  (A 157, § 7.16.)  Section 8.01 provides that "[a]ll employees will be entitled to a one (1) hour meal period.  The meal period will not be considered time worked."  (A 158, § 8.01.)  Other provisions establish the rescheduling of meal periods for employees on "flexible work schedules" who work through them (A 188, § VI.1), and compensation for "Staff Development Programs" and "Continuing Education Days". (A 130, § 3.05; A 158, § 7.20.)

The CBA also contains the formula for determining the Plaintiffs' "Base Compensation Rate," ("an employee's salary [as set forth in Schedule A of the CBA] exclusive of all differentials"); "Regular Compensation Rate" (covers all

paid time up to 75 hours in 14 days and "include[s] any shift differential, experience differential, educational differential or certification differential". . .pursuant to the CBA) and "Premium Compensation Rate" (for all hours of paid time in excess of 75 hours in a 14 day pay period or 7.5 hours in a single work day calculated at the rate of 1.5 the annual Regular Compensation Rate divided by 1950). (A 148, §§ 6.01-6.03; A 180-81, Schedule A.) The CBA also defines "applicable premium pay," beyond overtime, including enhanced pay as a result of an employee's shift differential; experience differential; educational differential; differential for work in a higher title; charge pay; preceptor pay; and certification differential. (A 167-171.) Plaintiffs' entitlement to overtime pay arises solely from the CBA because Plaintiffs are professional employees who receive a salary above the statutory minimum and are therefore "exempted" from the provisions of the FLSA. *See* 29 C.F.R. § 541.301(e)(2) ("Registered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption."). Thus, Plaintiffs cannot allege that their right to overtime is created by statute.

The CBA also sets forth when employees are paid (A 148, § 6.05), and a procedure for contesting the pay calculation. (A 148, § 6.05, A 193, Appendix D.)

Since NYPH's obligations are set forth in the CBA, the only contract addressing these things (SPA 12; A 178, § 17 (integration clause) ), Plaintiffs'

common law claims are preempted by Section 301.  *See, e.g., O'Rourke*, 501 F. Supp. 2d at 450; *McCarty v. Reynolds Metals Co*., 883 F. Supp. 356, 361 (S.D. Ind. 1995); *Cavallaro*, No. 09-40181-FDS, slip op. document no. 33; *Hart*, 2004 WL 438786, at *2.[17]

## POINT IV

### PLAINTIFFS' COMMON LAW CLAIMS ARE PREEMPTED BY THE FLSA

Plaintiffs' common law claims are preempted by the FLSA.  *See Clearing House Ass'n, L.L.C. v. Cuomo*, 510 F.3d 105, 113 (2d Cir. 2007), *aff'd in part, rev'd in part on other grounds*, 552 U.S. 519 (2009).  Where a plaintiff alleges state law claims duplicative of an FLSA claim, courts routinely dismiss them as preempted.  *See, e.g., Anderson v. Sara Lee Corp*., 508 F.3d 181, 194 (4th Cir. 2007); *Roman v. Maietta Constr., Inc*.,   147 F.3d 71, 76 (1st Cir. 1998); *Hinterberger,* No. 1:08-cv-00952-WMS, docket no. 34, at 19-22; *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 470 (E.D.N.Y. 2011); *DeSilva*, 770 F. Supp. 2d at 532-33.

Plaintiffs try to avoid this by arguing that "because the FLSA provides no claim for unpaid straight time wages, it cannot preempt state law claims seeking

---

[17] Plaintiffs' sole remedy (if any) is provided by the CBA.  Plaintiffs have, however, failed to allege that they exhausted their administrative remedies prior to bringing any suit under section 301 of the LMRA, nor have they.  (A 115, ¶ 10; A 174, § 14.)

relief for those unpaid wages." (Brief, 49.)  The basis, however, for the FLSA and common law claims is exactly the same: Defendants' alleged failure to compensate Plaintiffs and Class Members for all the time worked, including applicable premium pay.  (*Compare* A 48, ¶ 65; A 51, ¶¶ 83-85; A 52, ¶¶ 88, 89, 92, 93 *with* A 60-61, ¶¶ 147, 153, 155, 157; A 62-63, ¶¶ 162, 167; A 64, ¶¶ 175-177; A 65-67, ¶¶ 182, 185, 188, 189.) If Plaintiffs seek to recover unpaid *straight time* wages through their common law claims, such  claims are preempted by section 301.  If they seek unpaid *overtime* wages, the common claims are preempted by both section 301 and the FLSA.

Plaintiffs' assertion that *Overnite Transportation Co. v. Tianti,* 926 F.2d 220, 222 (2d Cir. 1991), *Shahriar v. Smith & Wollensky Restaurant Group, Inc*., 659 F.3d 234, 247-248 (2d Cir. 2011) and 29 U.S.C. § 218(a) establish that "this Court has explicitly and conclusively held that 'state overtime wage law is not preempted by. . . the FLSA,' " reads these authorities too broadly.  (Brief at 49.)

Citing 29 U.S.C. 218(a), *Overnite Transportation Co.,* 926 F.2d at 222, dealt with the FLSA's preemption of state statutory wage and hour claims.  It did not address preemption of common law claims seeking the same relief as FLSA claims.  *See, e.g., Sosnowy*, 764 F. Supp. 2d at 465.  Similarly, *Shahriar*, 659 F. 3d at 247-248 did not address FLSA preemption of duplicative common law claims, but rather held that the Savings Clause (29 U.S.C. § 218(a)) "demonstrates

Congress' intent to allow state wage laws to co-exist with the FLSA." (citations omitted).  As New York common law does not address state wage laws co-existing with the FLSA, the Savings Clause is inapplicable.  *See DeSilva*, 770 F. Supp. 2d at 532.

Plaintiffs likewise misconstrue the two Ninth Circuit cases they cite: (1) both *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144 (9th Cir. 2000) and *Lynne Wang v. Chinese Daily News, Inc*., 623 F.3d 743 (9th Cir. 2010), *cert. granted, vacated*, 132 S. Ct. 74 (2011), cited the FLSA's savings clause which says nothing about a parties' ability to pursue general common law claims; (2) *Wang* involved a California *statutory* claim plainly distinguishable from the common law claims asserted here; and (3) the *Wang* court noted that the trend among U.S. District Courts in California was to hold state law claims duplicative of the FLSA to be preempted. *Wang,* 623 F.3d at 759-60.

Finally, none of the cases Plaintiffs cite stands for the proposition that a party may pursue FLSA and common law claims based on the same allegations seeking the same relief.  (Brief, 50-51.)[18]

---

[18] Relying on *Overnite Transportation,* the court in *Davis v. Lenox Hill Hosp*., No. 03 Civ. 3746 DLC, 2004 WL 1926087, at *7 (S.D.N.Y Aug. 31, 2004), concluded that "[t]he FLSA does not preempt state law in the area of overtime compensation." (citation omitted.)  "Most district courts have not read the holding in *Overnite Transportation* so broadly" as the court did in *Davis* and, therefore, "*Davis* do[es] not support the proposition that the FLSA does not preempt state common law claims" *Sosnowy*, 764 F. Supp. 2d at 465 ("*Overnite Transportation*,

# POINT V

## THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' COMMON LAW CLAIMS

### A.    Breach of Contract

In New York, " 'an action for breach of contract requires proof of (1) a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages.' " *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (citing *Rexnord Holdings v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)).  The only relevant contract here is the CBA.

Plaintiffs fail to allege any statements, actions, or other conduct that would create an "express oral contract" or "implied oral contract."[19]    Moreover, the Complaint is devoid of any single specific allegation regarding any particular "defendant" where a representative of the "defendant" agreed to anything.  (A 59-60, ¶¶ 140, 141, 148.)   The absence of such details renders these purported contracts too indefinite to be enforceable.  *See Sirohi v. Trustees of Columbia*

---

and therefore *Davis*, do not support the proposition that the FLSA does not preempt state common law claims.")

[19] Apart from the logical and legal  impossibility of an "implied oral" agreement, A 69, ¶¶ 202-04, the fact that the wage and hour provisions of the CBA spell out in detail Plaintiffs' rights precludes any implied in fact contract theory.  Where there is an express contract, no recovery can be had on the theory of an implied in fact contract.  *Kapral's Tire Serv., Inc. v. Aztek Tread Corp.*, 124 A.D. 2d 1011, 1012 (4th Dep't 1986).  Moreover, the comprehensive CBA governs all aspects of Plaintiffs' compensation, both "gap" time (under 40 hours) and overtime.  By its terms it is exclusive.  (A 54, § 17.)

*Univ.*, 162 F.3d 1148, 1998 WL 642463, at *2 (2d Cir. 1998) (citing *Sud v. Sud*, 211 A.D.2d 423, 424 (1st Dep't 1995).)

Second, the "contract" is nothing more than an alleged promise by Defendants to comply with an existing legal duty which cannot form the basis of a contract because it lacks consideration.  (SPA 12.)  *See, e.g., Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 178 (2d Cir. 2006); *Hinterberger*, No. 1:08-cv-00952-WMS, docket no. 34, at 27 (citing *Murray*).

## B.   Implied Covenant of Good Faith and Fair Dealing

"New York does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when breach of contract based on the same facts is also pleaded."  (A 69-70, ¶¶ 208-210; SPA 12-13); *see also Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).  That is precisely the case here.  (*Compare* A 61, 155, 156-157 (good faith and fair dealing allegations) *with* (A 60-61, ¶¶ 145, 147, 151, 153, 155) (contract allegations).)

Citing *Gross v. Empire Healthchoice Assur. Inc*, 16 Misc. 3d 1112(A), 2007 WL 2066390 (N.Y. Sup. Ct. N.Y. County 2007), Plaintiffs argue that they are permitted to separately assert both causes of action.  *Gross* does not support this assertion.  Rather, *Gross* merely allows a plaintiff to recover for breach of the implied covenant of good faith in cases where the defendant exercises a contract right unfairly to deprive the other party of the benefit of the bargain.  *See, e.g.,*

*Harary v. Lollytogs, Ltd*., No. 07 cv 7878 (RPP), 2008 WL 294345, at *4
(S.D.N.Y. Feb. 1, 2008); *Hinterberger*, No. 1:08-cv-00952-WMS, docket no. 34, at
28-31.  No such allegation is made here.  The other cases cited by Plaintiffs, which
do not arise in the employment context, are likewise distinguishable.  *See, e.g.,*
*Maddaloni Jewelers, Inc. v. Rolex Watch USA, Inc.*, 41 A.D.3d 269, 270
(1st Dep't. 2007) (court permitted claim for breach of the implied covenant of
good faith and fair dealing where there was no separate claim for breach of
contract).[20]

## C.    Quantum Meruit and Unjust Enrichment/Restitution

Plaintiffs' quantum meruit and unjust enrichment/restitution claims were
correctly dismissed because they cannot be invoked as a cause of action where an
express contract, *i.e.*, the CBAs, governs the parties' relations.  (Brief, 54-56.)
*Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 189 (E.D.N.Y.
2004); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987);
*Hinterberger*, No. 1:08-cv-00952-WMS, docket no. 34, at 28-31.

The cases Plaintiffs cite do not support their position that both claims may
proceed in the same action. (Brief, 55-56.) For example, in *Picture Patents, LLC v.*
*Aeropostale, Inc*., No. 07 civ. 5567 (JGK), 2009 WL 2569121, at *3 (S.D.N.Y.

---

[20] Nor can Plaintiffs maintain a claim for breach of the implied covenant of good
faith and fair dealing because they were employees-at-will and there is no such
obligation in that context. *Nunez v. A-T Fin. Info., Inc*., 957 F. Supp. 438, 443
(S.D.N.Y. 1997).

Aug. 19, 2009), the court permitted the claims to go forward because "the wrongful conduct on which . . . unjust enrichment claims are based is different from the wrongful conduct on which the breach of contract claim is based." *See also Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) ("it is far from clear that there was an enforceable contract here"); *Intellectual Capital Partner v. Institutional Credit Partners, LLC*, No. 08 Civ. 10580 (DC), 2009 WL 1974392, at *8 (S.D.N.Y. July 8, 2009) (same); *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004) (court did not permit unjust enrichment and breach of contract claims to proceed in same action; unjust enrichment claim dismissed for lack of standing). Here, all the underlying allegations are the same for these two legal theories.

Second, Plaintiffs do not allege the reasonable value of the supposed services they provided, rendering their claim infirm. *See Leibowitz v. Cornell Univ.*, 445 F.3d 586, 593 (2d Cir. 2006); *DeSilva*, 770 F. Supp. 2d at 535.

Finally, these equitable doctrines are unnecessary because the FLSA provides an adequate remedy for any unpaid compensation Plaintiffs would be entitled to receive. *See, e.g., Maryland Cas. Co. v. W.R. Grace and Co.*, 218 F.3d 204, 212 (2d Cir. 2000); *Bongat*, 341 F. Supp. 2d at 189.

### D.    Fraud

Plaintiffs' fraud claim was correctly dismissed because they have not cited specific fraudulent statements, identified any alleged speaker(s), stated where or when any alleged statements were made, identified a single "corporate publication," or explained why any of Defendants' purported statements were fraudulent.  (*See* A 64, ¶¶ 174, 175.) *Sofi Classic S.A. de C.V. v. Hurowitz,* 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006) (citation omitted).  Rather, Plaintiffs rely on the identical boilerplate and conclusory allegations in each of these four actions that fall short of the particularity requirement set forth in Fed. R. Civ. P. 9(b).  *See id.; Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).  Moreover, the Complaint does not set forth with the required particularity the alleged fraudulent conduct of any "defendant".  *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993).  All that Plaintiffs do is cite general propositions of law.  (Brief, 56-58.)

Second, Fed. R. Civ. P. 9(b) requires that Plaintiffs allege facts which give rise to a strong inference of fraudulent intent, specifically: (1) facts demonstrating that the defendant had both the motive and opportunity to commit the fraud; or (2) facts showing strong circumstantial evidence of conscious dishonest behavior or recklessness.  *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 641 (E.D.N.Y. 2003) (citation omitted); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006).

Plaintiffs do neither. They only allege that NYPH and the other entities sought to cheat Plaintiffs out of their wages. (A 54, ¶ 107.) A "generalized profit motive that could be imputed to any company," however, "has been consistently rejected as a basis for inferring fraudulent intent." *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, No. 07-CV-1471 (RRM/LB), 2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009) (citations omitted).

Moreover, the fact that Plaintiffs' Complaint is neither specific to any fraud, nor specific to any named or so-called defendant, precludes a finding of a strong inference of fraudulent intent. *See, e.g., Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 261-62 (W.D.N.Y. 2010) (in dismissing claim under Fed. R. Civ. P. 9(b), court cited three allegations from the complaint, all of which are found -- almost verbatim -- in the Complaint here at A 54-55, ¶¶ 109, 110, 113).

Third, the paystubs and payroll information that Plaintiffs claim misled them to believe they were properly paid for hours worked would expose, not conceal, the fraud. *See Cavallaro*, 2010 WL 3609535, at *4; *Wolman*, 2010 WL 5491182, at *6.

Finally, a party cannot maintain overlapping fraud and breach of contract claims, which is what Plaintiffs do here. (*Compare* A 63-65, ¶¶ 171, 175, 178 (fraud) *with* A 59-66 ¶¶ 140-155 (breach of contract).) *See also Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994).

- 42 -

### E.     Negligent Misrepresentation

The District Court correctly dismissed this claim on the grounds that like Plaintiffs' fraud claim, "plaintiffs have not pleaded [it] with the specificity required by Fed. R. Civ. P. 9(b). . . ." (SPA at 13); *see, e.g., EBusinessware, Inc. v. Tech. Servs. Group Wealth Mgmt. Solutions, LLC*, No. 08 Civ. 09101 (PKC), 2009 WL 5179535, at *13 (S.D.N.Y. Dec. 29, 2009).

In addition, Plaintiffs must allege, among other things, the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff. *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144 (2007). The Complaint here does not, and an employer-employee relationship does not suffice. *DeSilva*, 770 F. Supp. 2d at 535.

### F.     Conversion

" 'New York law recognizes an action for conversion of money, but requires the Plaintiff to have 'ownership, possession or control of the money' before its conversion.' " *Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 02667 (LMM), 2008 WL 4866054, at *9 (S.D.N.Y. Nov. 6, 2008) (citation omitted). Here, Plaintiffs are not seeking the return of tangible checks, currency or coins, or an identified fund or account, but instead are trying to enforce an "obligation to pay." (A 66, ¶ 186.) This does not give rise to a claim for conversion. *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 883-84 (1st Dep't 1982).

Second, an action for conversion cannot be maintained " 'where damages are merely being sought for breach of contract' " which is what Plaintiffs seek here. *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (footnote omitted.)

Finally, a demand for return of the property and a refusal are required to state a claim for conversion under New York law. *State of New York v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259-60 (2002).   Plaintiffs do not allege that either occurred. *Stadt v. Fox News Network, LLC*, 779 F. Supp. 2d 312, 318-19 (S.D.N.Y. 2010).

The cases Plaintiffs cite are either irrelevant, or support Defendants' position. *Phansalkar v. Andersen Weinroth & Co., L.P.,* 175 F. Supp. 2d 635, 639 (S.D.N.Y. 2001) (court *did not* hold that wages over which the parties disputed plaintiff's entitlement supported claim for conversion); *Eldred v. Comforce Corp.,* No. 3:08-cv-1171 (LEK/DEP), 2010 WL 812698 (N.D.N.Y. Mar. 2, 2010) (plaintiffs alleged facts supporting the conclusion that they had superior right to wages and defendant used them for its own gain); *Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994).

## G.    Estoppel

Plaintiffs' claim seeking to estop Defendants from asserting statute of limitations defenses was properly dismissed.  (A 72, ¶ 227; *see also* A 64, ¶ 172.)

There is no equitable estoppel cause of action under New York law affirmatively to preclude a defendant from raising the defense of the statute of limitations. (SPA 13); *Gaind v. Pierot*, No. 04-CV 9407 (TPG), 2006 WL 846268, at *8 (S.D.N.Y. Mar. 31, 2006), *aff'd*, 282 F. App'x 946 (2d Cir. 2008); *Hinterberger,* No. 1:08-cv-00952-WMS, docket no. 34, at 26; *DeSilva*, 770 F. Supp. 2d at 535. Even if there were such a claim, Plaintiffs have failed to allege "conduct amounting to false representation" with the particularity required by Rule 9(b).

## POINT VI

### PLAINTIFFS' RICO CLAIM WAS CORRECTLY DISMISSED

The elements of a RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). "Racketeering activity" is defined to include certain federal crimes, including mail fraud. 18 U.S.C §1961. Pursuant to Fed. R. Civ. P. 9(b), a mail fraud predicate act must be pleaded with particularity in a RICO complaint. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).

**A.**    **Plaintiffs' Mail Fraud Allegations Do Not Comply with Rule 9(b)**

A recent decision from the Western District of New York with facts remarkably similar to this case (and involving the same plaintiffs' counsel) concisely describes the requirements for pleading mail fraud:

> Allegations of mail fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b) . . . . Pursuant to this higher pleading standard, the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). Plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme.

*Hinterberger,* No. 1:08-cv-00952-WMS, docket no. 34, at 14 (citation omitted.) In finding the plaintiffs' claims insufficient to comply with Rule 9(b), the court noted "[t]he Complaint is brought by four individuals on behalf of themselves and a putative class. The named Plaintiffs have offered no reason for their failure to specifically identify predicate acts particular to them." *Id.* at 15. The court's observation applies with equal force in this case. Plaintiffs here have not specifically identified any predicate acts particular to any of them, and their failure to do so is fatal to their RICO claim.

Plaintiffs contend that the District Court erred in focusing on the "particularity" language of Rule 9(b), and assert that their RICO allegations comply with Rule 9(b) in combination with Rule 8(a) because the Complaint gives defendants "fair notice of the particular fraudulent conduct that is alleged." (Brief, 68.) To the contrary, even if Plaintiffs were correct as to the standard (which they are not), their allegations of supposed mail fraud are so general and all-

encompassing as to be meaningless. They do not give "fair notice" of anything, certainly not of the contours of an alleged mail fraud claim.

Plaintiffs define the Defendants, RICO persons and the alleged RICO enterprise as more than 500 healthcare-related entities, and then make the sweeping claim that Defendants' mail fraud consisted simply of mailing payroll checks. Plaintiffs allege "more than 100" such payroll checks were mailed in the last ten years, without specifying a single plaintiff who received a fraudulent paycheck through the mail, or a single defendant that transmitted a "fraudulent" paycheck that way.

More significant, Plaintiffs do not make even the slightest effort to set forth what statements or words on the checks (if there even were any) were in fact knowingly false or made pursuant to a "scheme or artifice to defraud." 18 U.S.C. § 1341. The Complaint does not come close to meeting the "precision and some measure of substantiation" that Plaintiffs themselves concede is required to satisfy Rule 9(b).[21]  (Brief, 68.)  Plaintiffs' RICO claims fail to comply with Rule 9(b) pleading standards and were correctly dismissed.

---

[21]  Plaintiffs' characterization of the requirements of Rule 9(b) is significantly understated.  "The purpose of that requirement is (1) to give the defendants notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard defendants from frivolous charges that might damage their reputation." *Cavallaro*, 2010 WL 3609535 at *2 (citations omitted).  While the Complaint blatantly subverts each of these purposes, and evidently is designed to

The decisions Plaintiffs rely upon do not support their argument that they have sufficiently pleaded a RICO claim. The only Second Circuit decisions in their string cite contending that other courts have found that "allegations like those asserted in this case" support a RICO claim are clearly distinguishable in that the plaintiffs in those actions made vastly more specific allegations, and identification of dates, individuals, and specific activities, than Plaintiffs do here.  (Brief, 66-67.) *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1107 (2d Cir. 1988) (plaintiff identified specific sham documents created by defendants to hide assets and frivolous lawsuits and bribery of a judge designed to cover it up; dates, individuals and places were all alleged.); *Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995) (plaintiffs alleged specific forged documents and particular monetary amounts that were misdirected as a result); *see also Stickle v. SCI Western Mkt. Support Ctr., L.P.,* No. CV 08-083-PHX-MHM, 2008 WL 4446539 (D. Ariz. Sept. 30, 2008) (plaintiffs must prove their FLSA claims before their RICO claims even become ripe.)

The remaining decisions purportedly agreeing with Plaintiffs' position that their claims are pleaded with sufficient particularity are a Western District of Pennsylvania case, and a magistrate judge decision that relies on it.  *Kuznyetsov v.*

---

use a "groundless fraud claim" to conduct a discovery fishing expedition, the Complaint also fails to comply with even Plaintiff's watered-down Rule 9(b) pleading standard.

*West Penn Allegheny Health Sys., Inc*, No. Civ. A. 09-379, 2009 WL 2175585 (W.D. Pa. July 20, 2009); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-85J, 2009 WL 2940067 (W.D. Pa. Sept. 11, 2009).   Plaintiffs' counsel here also represented plaintiffs in those cases, as well as in *Stickle*.   Defendants respectfully urge that *Kuznyetsov* did not sufficiently consider the question presented, and its reasoning is unsound.   Rather, the recently-decided *Hinterberger* case addresses nearly-identical facts directly and is better reasoned.

## B.    Plaintiffs Fail to Identify the Purpose of the Mailing

To establish a predicate act, plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme.  *McLaughlin v. Anderson*, 962 F.2d 187, 190-91 (2d Cir. 1992) (citing *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987) and *Sears v. Likens*, 912 F. 2d 889, 893 (7th Cir. 1990)); *Barrus*, 732 F. Supp. 2d at 260-61.

Plaintiffs are unable to establish how the mailings furthered the alleged fraud.   Even if the paychecks had been mailed, taking Plaintiffs' allegations as true, the use of the mail was not in furtherance of the allegedly fraudulent scheme because the success of the scheme was not dependent upon the mailings, "either in obtaining the desired object or in avoiding or delaying detection of the scheme." *United States v. Greenleaf*, 692 F.2d 182, 186 (1st Cir. 1982) (citations omitted); *see also United States v. Pacheco-Ortiz*, 889 F.2d 301, 305-06 (1st Cir. 1989)

("[T]he scheme's completion or the prevention of its detection must have depended in some way on the mailings.")  (internal quotation marks and citations omitted).

**C.  Plaintiffs Fail to Allege Facts Giving Rise to a Strong Inference of Fraudulent Intent**

In order to adequately plead mail fraud, a plaintiff also must "allege facts that give rise to a strong inference of fraudulent intent."  *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (internal quotation marks and citation omitted).  As discussed at pp. 41-42, Plaintiffs have failed in this regard as well.

**D.  Failure to Allege Pattern of Racketeering Activity**

In order to adequately plead mail fraud, a plaintiff must also plead a pattern of racketeering activity.  *Barrus*, 732 F. Supp. 2d at 260.  In order to constitute a pattern of racketeering activity, the predicate acts must:  (a) be related; and (b) reveal the threat of continued, criminal conduct.  *Lavian v. Haghnazari*, 884 F. Supp. 670, 682 (E.D.N.Y. 1995).  Given that, as shown above, Plaintiffs have failed to allege in legally sufficient fashion the occurrence of a single predicate act, then, by definition they have not properly alleged a pattern of such acts.

This conclusion remains unaltered despite the multiplicity of mailings alleged by Plaintiffs.  *Cf. United States Textiles, Inc. v. Anheuser-Busch Cos*., 911 F.2d 1261 (7th Cir. 1990).  This is particularly so given that " 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that,

- 50 -

upon closer scrutiny, do not support it.' " *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) (citing *Efron v. Embassy Suites (Puerto Rico), Inc*., 223 F.3d 12, 20 (1st Cir. 2000)).

**E.    Plaintiffs Do Not Distinguish the Persons from the Enterprise**

A RICO enterprise must be distinct from the participants in the enterprise. *DeFalco v. Bernas*, 244 F.3d 286, 307 (2d Cir. 2001). Plaintiffs fail to allege the requisite distinction. They define the "enterprise" as "the entire collection of entities described in paragraphs 18-21 of the operative complaints." (Brief, 76.) They then claim that each " 'person' … is an individual or corporate entity that is 'employed by or associated with' the enterprise." (*Id*.)    A RICO enterprise, however, cannot consist "merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994). Plaintiffs' allegations that the "enterprise" is the collection of the entities and individuals that are the defendants (Brief, 76) are insufficient to meet the requirement that the RICO enterprise and person(s) be distinct.  *Hinterberger,* No. 1:08-cv-00952-WMS, docket no. 34, at 16-18; *Riverwoods,* 30 F.3d at 344; *DeSilva*, 770 F. Supp. 2d at 529-30.   Plaintiffs' reliance on *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) for their contention that they sufficiently pleaded a distinct enterprise is misplaced.  In *King,* the U.S. Supreme

Court explicitly did not overturn the requirement that "to establish liability under §

1962(c), one must allege and prove the existence of two distinct entities: (1) a

'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by

a different name." *Id*. at 161.  As noted above, Plaintiffs fail to adequately allege

this distinction.

## F.    Even if Plaintiffs Had Adequately Pleaded a RICO Claim, They Lack Standing to Pursue a RICO Claim

To establish a RICO claim, "a plaintiff must show . . . that the injury was

caused by the violation of Section 1962."  *DeFalco*, 244 F.3d at 305 (citation

omitted).  In furtherance of this requirement, a plaintiff must plead facts that

"establish a link between the claimed injury and the predicate acts alleged."

*Frangipani v. HBO*, No. 08 Civ. 5675 (GBD), 2010 WL 1253609, at *8 (S.D.N.Y.

Mar. 16, 2010) (citation omitted).  Accordingly, a plaintiff " 'does not have

standing if he suffers an injury that was indirectly (and hence not proximately)

caused by the racketeering activity or RICO predicate acts, even though the injury

was proximately caused by some non-RICO violation committed by the

defendants.' "  *Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08

Civ. 6150 (PAC), 2010 WL 3026510, at *8 (S.D.N.Y. Aug. 2, 2010) (citation

omitted).

Here, the injury for which Plaintiffs seek to recover arises from alleged

underlying wage and hour violations, not from the mailing of the paychecks after

the fact.  Thus, Plaintiffs fail to allege that the predicate acts for the RICO claim--the alleged mail fraud--caused Plaintiffs' injury.  This is only logical given that it is not the alleged mailing of the payroll check that caused Plaintiffs' alleged injury, but rather the alleged failure to pay a proper wage.  *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 587 (S.D.N.Y. 1995).

## G.    Plaintiffs' RICO Claim is Precluded by the FLSA

Plaintiffs' claim is for unpaid overtime under the FLSA.  The FLSA, however, sets forth an elaborate statutory scheme with exclusive remedies for violations of its terms.  *See* 29 U.S.C. §§ 206, 207, 216, 216(b).  Thus when, as here, a plaintiff brings a RICO claim in conjunction with a FLSA claim, and the same alleged facts support both claims, under the doctrine of conflict preemption, the FLSA precludes the RICO cause of action.  *See Hinterberger,* No. 1:08-cv-00952-WMS, docket no. 34, at 10-13; *DeSilva*, 770 F. Supp. 2d at 512-519; *Eldred,* 2010 WL 812698, at *10; *Choimbol v. Fairfield Resorts, Inc*., No. 2:05cv463, 2006 WL 2631791, at *7 (E.D. Va. Sept. 11, 2006).

## POINT VII

## THE SUFFICIENCY OF PLAINTIFFS' COLLECTIVE/CLASS ALLEGATIONS IS NOT RIPE FOR DETERMINATION

In contrast to the other cases, heard herewith, no motion for conditional collective or class action certification was made in this case.  Plaintiffs' argument

that their allegations are sufficient to sustain a collective and/or class action is therefore premature.  (Brief, 79-81.)

## POINT VIII

### THE DISTRICT COURT CORRECTLY DENIED LEAVE TO AMEND

Plaintiffs' filed their first Complaint on March 24, 2010.  (A 13, Docket No. 1.)  On June 16, 2010 Plaintiffs filed a First Amended Complaint which added the common law claims at issue. (A 16, Docket No. 39.)  Between June 22 and July 12, 2010, the then existing 25 defendants submitted letters to the District Court detailing the deficiencies in these claims and requesting a pre-motion to dismiss conference with the court. (A 21-22, 7/20/2010 Docket Entry.)   That conference was held on September 28, 2010.  (A 23, 9/28/2010 Docket Entry.)

Plaintiffs' filed their Second Amended Complaint on October 25, 2010.  (A 24, Docket No. 148.)  Plaintiffs failed to correct the deficiencies in their RICO and common law claims repeatedly brought to their attention choosing instead to wait and see if these claims were rejected by the District Court.  (A 24, 25, Docket Nos. 150-168.)

Where Plaintiffs had ample notice of the deficiencies in their claims, and nonetheless chose to press forward without attempting to cure them, the District Court's conclusion that Plaintiffs lacked the necessary facts and amendment would be futile was appropriate.  *See, e.g., U.S. v. Brow,* No. 10-1908-cv, 2012 WL

75361, at *2 (2d Cir. Jan. 11, 2012); *ACA Fin. Guar. Corp. v. Advest Inc.,* 512 F.3d

46, 57-58 (1st Cir. 2008); *Mell*, 2010 WL 4668966, at *9; *Curran v. Fedex Ground

Package Sys., Inc*., 593 F. Supp. 2d 341, 345 (D. Mass. 2009).[22]

## POINT IX

### THIS CASE SHOULD NOT BE ASSIGNED TO A NEW JUDGE IF REMANDED

Plaintiffs argue that the District Judge's "gratuitous[]" statement that

"plaintiffs' claims have no merit" demonstrates partiality. (Brief, 82.)  However,

the District Judge merely summarized his rulings regarding the patently

insufficient conclusory pleadings before him, and did not express an entrenched

viewpoint. (SPA 13-14.)  This does not rise to the level of bias that must be present

in order to compel reassignment. *See Mackler Prods., Inc. v. Cohen*, 225 F.3d 136,

147 (2d Cir. 2000).

For example, in *Shcherbakovskiy v. Da Capo Al Fine, Ltd.* 490 F.3d 130,

142 (2d Cir. 2007), the decision on which Plaintiffs rely, the district judge

criticized the appellant's personal credibility, stating that his claim was

" 'nonsense,' " " 'drivel,' " a " 'fraud,' " and a " 'lie.' "  That did not occur here,

and Plaintiffs have not put forth the slightest evidence that the District Judge would

---

[22] Plaintiffs' assertion that they were not permitted to replead their FLSA and NYLL claims is not correct. (Brief, 81.) The Order specifically permitted repleading. (SPA 13.) Plaintiffs acknowledge this. (Brief, 12, n.3.) To the extent the case was terminated in its entirety by the Clerk of the Court, Plaintiffs could have remedied that pursuant to Fed. R. Civ. P. 60.

have any difficulty in putting out of his mind any prior determinations that may be overruled by this Court. *Lerner*, 459 F.3d at 296; *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 271 (2d Cir. 1999).

Finally, Plaintiffs in this case (and the three others being appealed) are currently pursuing FLSA and/or NYLL claims based on the same alleged conduct in four newly filed actions assigned to Judge Crotty. *See* SDNY Docket Nos. 1:11-cv-06658; 11-cv-06393; 11-cv-06657; 11-cv-06366. Three sets of defendants in those cases have filed Fed. R. Civ. P. 12 motions to dismiss; one set of defendants has answered. Plaintiffs have not objected to Judge Crotty presiding over these four actions. Reassignment would result in waste and duplication as the underlying alleged claims in both cases, with which Judge Crotty is already familiar, are the same.

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that this Court affirm the District Court decision in its entirety.

New York, New York
March 12, 2012

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: /s/ Kenneth J. Kelly
     James S. Frank
     Kenneth J. Kelly
     Kenneth W. DiGia
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500


WILLKIE FARR & GALLAGHER

By: /s/ Terence K. McLaughlin
     Terence K. McLaughlin
787 Seventh Avenue
New York, NY 10019
(212) 728-8000

Attorneys for Defendants-Appellees

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(A)**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(9)(B).   It contains 13,785 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App P. 32(a)(6).  It has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated:  March 12, 2012