# 11-0734-cv

# United States Court of Appeals
## for the
# Second Circuit

DIANE LEE SUSSMAN, STEVIE HARISTON, CAROLE TASSY,
MARY MAHONEY, LINDA MARRONE, MARY OLDAK,
VOLVICK DESIL, STEPHANIE UHRIG,

*Plaintiffs,*

MASAHIRO NAKAHATA, on behalf of herself and all other employers
similarly situated, DIANA GARDOCKI, on behalf of herself and all other
employees similarly situated,

*Plaintiffs-Appellants,*

– v. –

NEW YORK-PRESBYTERIAN FUND, INC., NEW YORK-PRESBYTERIAN
HOSPITAL, BROOKLYN HOSPITAL CENTER, HOLY NAME HOSPITAL, INC.,
HOLY NAME MEDICAL CENTER, LAWRENCE HOSPITAL CENTER,
MARY IMOGENE BASSETT, oNAL CARE NEW MILFORD HOSPITAL, INC.,
NEW YORK COMMUNITY HOSPITAL OF BROOKLYN, INC., NEW YORK
DOWNTOWN HOSPITAL, NEW YORK HOSPITAL MEDICAL CENTER
OF QUEENS, NEW YORK METHODIST HOSPITAL,

*(For Continuation of Caption See Reverse Side of Cover)*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PETITION FOR REHEARING *EN BANC*
## BY DEFENDANTS-APPELLEES

KENNETH J. KELLY
JAMES S. FRANK
KENNETH W. DiGIA
EPSTEIN BECKER & GREEN, P.C.
*Attorneys for Defendants-Appellees*
250 Park Avenue
New York, New York 10177
(212) 351-4500

WESTCHESTER SQUARE MEDICAL CENTER, INC., NYACK HOSPITAL, PALISADES MEDICAL CENTER, STAMFORD HOSPITAL, VALLEY HOSPITAL, WHITE PLAINS MEDICAL CENTER, WINTHROP-UNIVERSITY HOSPITAL, WYCHOFF HEIGHTS MEDICAL CENTER, ST. MARY'S HEALTHCARE SYSTEM FOR CHILDREN, INC., A. SOLOMON TORRES, NEW YORK SOCIETY FOR THE RELIEF OF THE RUPTURED AND CRIPPLED, MAINTAINING THE HOSPITAL FOR SPECIAL SURGERY, MARY IMOGENE BASSETT HOSPITAL, NEW MILFORD HOSPITAL, INC., NORTHERN WESTCHESTER HOSPITAL ASSOCIATION, WHITE PLAINS HOSPITAL MEDICAL CENTER, WYCKOFF HEIGHTS MEDICAL CENTER, NEW YORK GRACIE SQUARE HOSPITAL, INC., AMSTERDAM NURSING HOME CORPORATION,

*Defendants,*

NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., HERBERT PARDES, NEW YORK AND PRESBYTERIAN HOSPITAL, WAYNE OSTEN,

*Defendants-Appellees.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for Defendants-Appellees states as follows:

The New York and Presbyterian Hospital is a New York not-for-profit corporation; it does not have any publicly traded stock, and it is engaged in providing health care services in New York City.

The New York-Presbyterian Healthcare System, Inc. is a New York not-for-profit corporation; it does not have any publicly traded stock.

New York, New York
July 24, 2013

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: /s/ Kenneth J. Kelly
     Kenneth J. Kelly
     James S. Frank
     Kenneth W. DiGia
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500

Attorneys for Defendants-Appellees

# TABLE OF CONTENTS

**Page**

I.    The Panel's Decision Conflicts with Decisions of the United States Supreme Court and this Court. Pursuant to F.R.A.P. 35, Defendants-Appellees Respectfully Submit that Consideration by the Full Court is Necessary..........................................................................1

II.    Statement of Facts Relevant to Defendants' Petition .....................3

III.    Reasons for Rehearing *En Banc* ....................................................7

    A.    The Panel's Decision that Plaintiffs Could Avoid Section 301 Preemption by their Pleading Conflicts with Supreme Court Decisions, Decisions of this Court and the Complete Preemptive Force of Section 301....................................7

    B.    The Panel's Decision that the District Court Improperly Considered the CBAs Defendants Submitted with Their Motion Conflicts with Other Decisions of this Court .........................11

    C.    The Panel Decision Conflicts with a Decision of this Court that there is No Claim for Gap-Time under the NYLL Sections Cited in the Complaint ...............................................13

    D.    Plaintiffs Should Have Repleaded in *Nakahata I* ...............13

IV.    Conclusion .....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985)..................................................................7

*Avco Corp. v. Aero Lodge No. 753*,
  390 U.S. 557 (1968)................................................................1, 8

*Buggs v. Elgin, Joliet & Eastern Ry. Co*,
  852 F.2d 318 (7th Cir. 1988) ..............................................14

*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987)..................................................................8

*Cavallaro v. UMass Mem'l Healthcare, Inc.*,
  678 F.3d 1 (1st Cir. 2012)....................................................10

*Cicio v. Does 1-8*,
  321 F.3d 83 (2d Cir. 2003) ...................................................9

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) ..................................................12

*Daniels ex rel. Daniels v. Commissioner of Soc. Sec.*,
  456 F. App'x 40 (2d Cir. 2012) ...........................................12

*DiFolco v. MSNBC Cable LLC*,
  622 F.3d 104 (2d Cir. 2010) ....................................3, 11, 12

*Domnister v. Exclusive Ambulette, Inc.*,
  607 F.3d 84 (2d Cir. 2010) .................................................1, 8

*Hamm v. U.S.*,
  483 F.3d 135 (2d Cir. 2007) ...............................................11

*Hines v. Anchor Motor Freight, Inc.*,
  424 U.S. 554 (1976)..................................................................8

*In re Marc Rich & Co., A.G.*,
   739 F.2d 834 (2d Cir. 1984) ..............................................................14

*Lingle v. Norge Div. of Magic Chef, Inc.*,
   486 U.S. 399 (1988)...........................................................................7

*Local 174, Teamsters v. Lucas Flour Co.*,
   369 U.S. 95 (1962)..............................................................................7

*Luckett v. Bure*,
   290 F.3d 493 (2d Cir. 2002) .......................................................2, 11

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
   711 F.3d 106 (2013)......................................................................13, 15

*Metro. Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987)..............................................................................8

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) .........................................................3, 13

*Quevedo v. Postmaster, U.S. Postal Serv.*,
   774 F. Supp. 837 (S.D.N.Y. 1991) ..................................................14

*Republic Steel Corp. v. Maddox*,
   379 U.S. 650 (1965)............................................................................8

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   332 F.3d 116 (2d Cir. 2003), *abrogated on other grounds by
   Romano v. Kazacos*, 609 F.3d 512 (2d Cir. 2010)...........................8-9

*Stewart Sec. Corp. v. Guaranty Trust Co.*,
   71 F.R.D. 32 (W.D. Okla. 1976) ......................................................15

*Sullivan v. American Airlines, Inc.*,
   424 F.3d 267 (2d Cir. 2005) ..............................................................8

*Vaca v. Sipes*,
   386 U.S. 171 (1967)............................................................................8

*Wall v. CSX Transp., Inc.*,
   471 F.3d 410 (2d Cir. 2006) ...........................................................1, 8

## STATUTES

29 U.S.C. § 151, *et seq.*......................................................................*passim*

Fed. R. Civ. P. 12 .............................................................................*passim*

N.Y. Lab. Law § 663(1) ...............................................................................3

Fed. R. Civ. P. 60 ......................................................................................14

**I.    The Panel's Decision Conflicts with Decisions of the United States Supreme Court and this Court. Pursuant to F.R.A.P. 35, Defendants-Appellees Respectfully Submit that Consideration by the Full Court is Necessary.**

The Panel's July 11, 2013 Decision vacated in part and remanded the order below to allow Plaintiffs-Appellants ("Plaintiffs") to replead, despite the facts that: Plaintiffs' wage claims were "completely" preempted by the Labor Management Relations Act ("LMRA"); Plaintiffs, each a union member, had not sought to arbitrate their wage claims under the applicable collective bargaining agreement ("CBA"); and as a result, no amount of repleading can cure this fatal defect. Defendants-Appellees ("Defendants") respectfully submit that consideration by the full Court is warranted because the Panel's Decision conflicts with decisions of either the United States Supreme Court or this Court on three points and consideration by the full Court is therefore necessary to secure and maintain uniformity of the Court's decisions.[1]

*First*, the Panel's holding that "we [do not agree] with the District Court that Plaintiffs were responsible for pleading the CBAs in the complaints" and that "plaintiff is master of the complaint," Decision, 23-24, conflicts with decisions of the Supreme Court, *e.g*., *Avco Corp. v. Aero Lodge No. 753*, 390 U.S. 557 (1968); and this Court, *e.g., Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 89 n.2 (2d Cir. 2010); *Wall v. CSX Transp., Inc*., 471 F.3d 410, 423 n.11 (2d Cir. 2006),

---

[1] A copy of the Panel's Decision is attached.

holding that a plaintiff cannot avoid the completely preemptive effect of Section 301 of the LMRA, 29 U.S.C. § 151, *et seq*. ("Section 301") merely by avoiding any reference in their Complaint to the governing contract.

*Second*, because Plaintiffs did not attach the controlling CBAs to their Second Amended Complaint ("Complaint") but, rather, Defendants attached them to their motion to dismiss, the Panel ruled that "[w]e cannot affirm the dismissal on the basis of [Section 301] LMRA preemption pursuant to Rule 12(b)(6) because such dismissal was premised on matters outside of the pleadings, and was, therefore, inappropriate." (Decision, 23.)   The Panel's holding conflicts with decisions of this Court holding that it is proper to consider the CBA on a motion based upon "complete preemption" by a federal statute such as the LMRA.

Defendants' motion to dismiss on the basis of preemption pursuant to Section 301 was not based only on Fed. R. Civ. P. 12(b)(6), but also on Fed. R. Civ. P. 12(b)(1).   (*See* A 93-95, 96-97, 113-15; *Nakahata v. New York Presbyterian Healthcare System, Inc.,* 10-cv-02661 ("*Nakahata I*"), Docket No. 155 at 21, n.12.)   On such a motion, a district court is not limited to matters attached to the complaint.   The Panel held that the District Court was so limited; thus, the Decision conflicts with *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) which holds that materials outside a complaint may be considered on a Rule 12(b)(1) motion.

2

Even if the District Court holding were limited to Rule 12(b)(6), the holding that the CBAs were inappropriately considered conflicts with *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010), which holds that materials outside a complaint may be considered where they are integral to the Complaint.

*Third*, citing New York Labor Law ("NYLL") § 663(1), the Panel held that "[b]ecause the District Court did not consider the NYLL gap-time claims separately from the overtime claims, and because Plaintiffs will have an opportunity to amend their pleadings, we remand the NYLL gap-time claims to the District Court to consider in light of any amended pleadings." (Decision, 21-22.) Plaintiffs never relied on that NYLL provision in their Complaint. Rather, they cited only and nothing more than "N.Y. Lab. Law § 190(8)" and "N.Y.Lab. Law § 191 *et seq.*" (A 68, ¶ 201.) Permitting them to replead a gap-time claim based on NYLL sections 190(8) and 191, the only statutory sections they cited, conflicts with *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) which held that NYLL section 191 does not provide a substantive entitlement to a particular wage. And, in any event, such a state statutory claim is preempted by the LMRA.

## II.    Statement of Facts Relevant to Defendants' Petition

Plaintiffs Masahiro Nakahata and Diana Gardocki are professional salaried registered nurses ("RNs") who were employed by The New York and Presbyterian Hospital ("NYPH") pursuant to the terms of a CBA between NYPH and the New

York State Nurses Association ("NYSNA"). (A 115, ¶¶ 8, 9.)[2]  The 72-page CBA sets forth the comprehensive terms and conditions of Plaintiffs' employment with NYPH, including their salaries and salary enhancements (*i.e.*, "premium pay"), entitlement to meal periods and breaks, training and grievance procedures. (A 114, ¶ 5; A 116-253; 254-333; 334-76.)

Plaintiffs' Complaint alleged that NYPH and the other defendants maintained three alleged "policies" which resulted in the Plaintiff RNs (and the putative class members) not being paid for unspecified meal periods and breaks through which they allegedly worked, pre- and post-shift work, and training and, as a result, being denied "applicable premium pay" in violation of the FLSA, NYLL, the Racketeer Influenced and Corrupt Organizations Act, and New York common law.  (A 30-74.)

Defendants moved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the Complaint.  (A 93-95, 96-97, 113-15; *Nakahata I* Docket No. 155 & at 21, n.12.)  On January 28, 2011, the District Court dismissed Plaintiffs' FLSA claims on the ground that Plaintiffs' Complaint "contain[s] no information that might nudge the allegations from speculative to plausible."  (Opinion & Order, 8.) The District Court concluded that the Complaint "contain[s] no more than mere

---

[2] References to ("A ___") are to the parties' Joint Appendix submitted to the Court on this appeal.

boilerplate assertions of various legal conclusions" that "cannot survive the defendants' motions to dismiss." (*Id*. at 13.)

The District Court also dismissed Plaintiffs' NYLL claims. After acknowledging the existence of a gap-time claim under New York law--"[a]ny claims for unpaid regular (i.e., non-overtime) wages, therefore, must be made under state labor law and/or the collective bargaining agreement"--the District Court dismissed this claim because "Plaintiffs only cite to NYLL §§ 190(8) and 191 et seq., neither of which supports their claims for unpaid wages or overtime." (Opinion & Order, 7-8.)  NYLL section 663, the section cited in the Decision as supporting a gap-time claim under the NYLL, was not referred to or cited in the Complaint.  (*See generally* A 30-74; *see also Nakahata I* Docket Nos. 1, 39.)

Finally, Defendants sought dismissal of Plaintiffs' common law claims on the basis they were preempted by Section 301 because they required interpretation of the CBAs.  (*Nakahata I* Docket No. 155, 9-21.)  In doing so, Defendants attached the CBAs to their motion.  (A 114, ¶ 5.)  The District Court dismissed these claims on the basis that, "even if they were properly pleaded, they would be preempted by the existence of a collective bargaining agreement, which supersedes any possible oral or written contract entered into at the time of employment." (Opinion & Order, 12.)

The District Court dismissed the Complaint in its entirety on January 28, 2011 and directed the Clerk of the Court to terminate the case.  In doing so, however, it permitted Plaintiffs to replead their FLSA and NYLL claims "with the requisite factual specificity."  (*Id.*, 13.)  On January 31, 2011, the Clerk of the Court closed this case.  (A 26, Entry 170.)

Despite the fact they were well aware that the statute of limitations continued to bar their wage claims on a week-to-week basis, Plaintiffs did nothing to preserve their FLSA and NYLL claims in *Nakahata I*.  Rather, they waited almost eight months and then filed a second action on September 23, 2011 in which they repleaded those claims.  (Decision, 14, n.6; *see also Nakahata v. New York Presbyterian Healthcare System, Inc., et al.*, SDNY Docket No. 11-cv-06658 ("*Nakahata II*".))  The complaint in that action mainly repeated the allegations from *Nakahata I* with the addition of one paragraph for each named Plaintiff.  (*Nakahata II* Docket No. 20 at 6, n.2 & Appendix.)  Plaintiffs' tactic in electing not to seek to modify the judgment in *Nakahata I* to allow an amendment in that action was obvious: to take an immediate appeal to this Court in that action while continuing to litigate the same claims in a new action in the District Court.

## III.    Reasons for Rehearing *En Banc*

### A.    The Panel's Decision that Plaintiffs Could Avoid Section 301 Preemption by their Pleading Conflicts with Supreme Court Decisions, Decisions of this Court and the Complete Preemptive Force of Section 301

The Panel disagreed with the District Court that Plaintiffs were responsible for pleading the CBAs in the Complaint and held that "[t]he plaintiff is master of the complaint and may assert state law causes of action that are independent of the CBA." (Decision, 23-24.)  The Panel further held that "[i]t is a defendant's responsibility to raise preemption by the CBA as a defense, but, as discussed above, a motion addressed to the adequacy of the pleadings is not necessarily the proper place for preemption to be decided."  (*Id*., 24.)  Defendants respectfully submit, and the Supreme Court and this Court have held, that Plaintiffs cannot so easily avoid the completely preemptive effect of Section 301.

The Supreme Court has made clear that federal labor law: (1) preempts state law claims that require interpretation of the terms of a labor contract, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-12 (1985); *Lingle v. Norge Div. of Magic Chef, Inc*., 486 U.S. 399, 411 (1988); (2) requires such claims to be treated as federal labor contract law claims under LMRA Section 301, *Local 174, Teamsters v. Lucas Flour Co*., 369 U.S. 95, 103 (1962); (3) mandates that a claimant attempt to exhaust administrative remedies pursuant to the governing labor contract's grievance and arbitration procedure before resorting to federal

7

court under Section 301, *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562-63 (1976); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965); and (4) requires that where the grievance and arbitration procedures were not exhausted, proof must be shown that the failure to exhaust was due to the union's breach of its duty of fair representation toward the employee. *Vaca v. Sipes*, 386 U.S. 171, 186 (1967).

Section 301 is one of the few federal statutes recognized as having "the requisite extraordinary preemptive force to support complete preemption." *Sullivan v. American Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005) (citations omitted); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Avco Corp. v. Aero Lodge No. 753*, 390 U.S. 557 (1968); *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 89 n.2 (2d Cir. 2010); *Wall v. CSX Transp., Inc*., 471 F.3d 410, 423 n.11 (2d Cir. 2006)   " 'Under the complete preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state law claims coming within the scope of the federal statutes are transformed for jurisdictional purposes, into federal claims--*i.e.,* completely preempted.' " *Sullivan*, 424 F.3d at 272; *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987) ("Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.").   This "complete preemption" "*trumps the well-accepted*

8

principle that the plaintiff is the 'master of the claim'", *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 124 n.5 (2d Cir. 2003) (emphasis added), *abrogated on other grounds by Romano v. Kazacos*, 609 F.3d 512, 519 n.2 (2d Cir. 2010), thereby preventing a party from avoiding the preemptive force of Section 301 and allowing a defendant to raise preemption by way of a motion to dismiss. *See, e.g*., *Cicio v. Does 1-8,* 321 F.3d 83, 105-06 (2d Cir. 2003) (claims completely preempted by ERISA would be subject to a motion to dismiss).

Plaintiffs asserted a variety of common law claims against Defendants, including claims based on an employment contract. In support of these allegations, they alleged that (a) "[b]y entering into an employment relationship, defendants and Plaintiffs and Class Members entered into a contract for employment, . . ."; (b) "from time to time, these contracts were memorialized in writing"; (c) "defendants contracted to hire Plaintiffs and Class Members at a set rate of pay, with a set schedule for a particular position, and under set terms of employment"; (d) "from time to time, the contracts between defendants . . . and Plaintiffs and Class Members were memorialized in writing and were explicitly intended to order and govern the employment relationship between defendants and Plaintiffs and Class Members"; and (e) "any written contracts between Plaintiffs and Class Members and defendants contained an implied covenant of good faith and fair dealing . . . ." (A 59-61, ¶¶ 140, 152, 154, 156.) According to the Complaint these written

9

contracts were between Defendants, on the one hand, and Plaintiffs and all Class Members, on the other hand. (*Id.*) Not a single example of a written contract of employment is attached to the Complaint or specifically described, despite the fact that over 150 individuals filed "Consent to Become Party Plaintiff" forms with the District Court. (A 13-22, Entry Nos. 2-5, 7, 9-15, 18-25, 27-28, 30-31, 33-35, 38, 40, 50, 89, 97, 121-22, 124.) The answer to why Plaintiffs did not do this is simple: the only written contracts that could conceivably govern the "terms and conditions of employment" of thousands of employees in one fell swoop are the CBAs. (A 44, ¶ 27.)

Determining whether Plaintiffs were adequately paid for meal breaks, pre- and post-shift work and training--and determining the remedy to which they might be entitled if they were not--requires interpretation of a number of interlocking provisions of the CBAs. (*See* Brief for Defendants-Appellees submitted to the Court at 29-34.) This is not simple arithmetic, but must take into account the various contractual overtime and "premium" compensation provisions of the CBAs. "Determining whether there are wages owed thus will require construing and applying the various 'peculiarities of industry-specific wage and benefit structures' embodied in the CBA--a complicated task better suited for an arbitrator's expertise." *Cavallaro v. UMass Mem'l Healthcare, Inc.,* 678 F.3d 1, 8 (1st Cir. 2012).

10

**B. The Panel's Decision that the District Court Improperly Considered the CBAs Defendants Submitted with Their Motion Conflicts with Other Decisions of this Court**

Defendants respectfully submit that, apart from the effect of complete preemption, the Panel's holding that "[w]e cannot affirm the dismissal on the basis of LMRA preemption pursuant to Rule 12(b)(6) because such dismissal was premised on matters outside of the pleadings, and was, therefore, inappropriate" (Decision, 23) conflicts with other decisions of this Court in two respects.

First, Defendants' motion to dismiss was premised on both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In holding that the common law claims were preempted "by the existence of a collective bargaining agreement," the District Court did not explicitly rely on Rule 12(b)(6). Dismissal pursuant to Rule 12(b)(1) based on materials outside the Complaint is consistent with prior decisions of this Court. *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) (with regard to Rule 12(b)(1), this Court has held that in "resolving the question of [subject matter] jurisdiction, the district court can refer to evidence outside the pleadings"), *quoted in Hamm v. U.S.*, 483 F.3d 135, 137 (2d Cir. 2007).

Second, even if the District Court decision were premised solely on 12(b)(6), it properly relied on the CBAs submitted by Defendants. In *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010) the Court held that "[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) . . . [w]here

11

a document is not incorporated [in the complaint] by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* at 111 (internal citations omitted) (*quoted in Daniels ex rel. Daniels v. Commissioner of Soc. Sec.*, 456 F. App'x 40, 41 (2d Cir. 2012)).

As detailed above at 9-10, the Complaint relies "heavily" upon the terms and effect of the CBAs (disguised in the Complaint by the vague term "contracts"), the only written agreements that govern the terms and conditions of Plaintiffs' employment, thereby rendering them integral to the Complaint. Moreover, there was no potential for prejudice to Plaintiffs as they were on notice of the terms of the CBAs. Since the main problem with considering documents outside the complaint on a motion to dismiss is lack of notice to the plaintiff, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Indeed, in their opposition to Defendants' motion to dismiss, Plaintiffs did not dispute that they were union members or argue that they were unaware of the terms of the CBAs. (A 115, ¶¶ 8, 9; *Nakahata I* Docket No. 162 at 8-9 & n.4, 11-12 & n.7.)

### C.   The Panel Decision Conflicts with a Decision of this Court that there is No Claim for Gap-Time under the NYLL Sections Cited in the Complaint

The Decision, contrary to the Court's decision in *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010), also permitted Plaintiffs to replead their NYLL claim to assert a gap-time claim.  Whatever NYLL section Plaintiffs purport to rely on, such state law claims are preempted, and Plaintiffs never sought to arbitrate their claims for unpaid wages.

### D.   Plaintiffs Should Have Repleaded in *Nakahata I*

The Panel faulted the District Court in holding that "the District Court abused its discretion in not permitting Plaintiffs to file an amended complaint" in *Nakahata I* (Decision, 14) because as a result, Plaintiffs lost wage claims as the statute of limitations extinguished claims paycheck-to-paycheck.  In fact, any prejudice that Plaintiffs may have incurred by reason of the passage of time was self-inflicted.  Plaintiffs could have filed a new action immediately, instead of waiting almost eight months, or alternatively could have moved in the District Court to amend the judgment to allow a revised pleading in *Nakahata I*.

Apart from the fact that repleading, even with the detail required by *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2013), would be futile as a result of the complete preemption of Plaintiffs' claims by the LMRA and their failure to arbitrate, Defendants respectfully submit that the Panel missed the key

13

issue:  the appropriate way for Plaintiffs to have repleaded in *Nakahata I* was to have sought relief pursuant to Fed. R. Civ. P. 60 to file an amended complaint in *Nakahata I*; any prejudice they suffered resulted solely from their tactical decision not to do so and then inexplicably waiting almost eight months to file *Nakahata II*. (Decision, 13-14.)

Federal Rule of Civil Procedure 60(a) provides that: "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  Fed. R. Civ. P. 60(a). Thus, a simple motion to the District Court in *Nakahata I* explaining (i) that Plaintiffs were given permission to replead in *Nakahata I*; (ii) that the case was closed the next business day so they could not exercise the very right they had been given; and (iii) the District Court overlooked the prejudice that would ensue if they did not replead in *Nakahata I*, would likely have been successful, thus allowing Plaintiffs to file an amended complaint in that action thereby preventing the loss of claims due to the statute of limitations.[3]  *See In re Marc Rich & Co., A.G.,* 739 F.2d 834, 836-37 (2d Cir. 1984).  Instead, Plaintiffs did nothing, waited almost eight months to file *Nakahata II* and then used the very prejudice they created for

---

[3] Not only was relief available under Rule 60(a), Rule 60(b)(1) or (b)(6) were also available: "a court may relieve a party . . . from a final judgment, order, or proceeding for . . : (1) mistake, inadvertence, surprise, or excusable neglect; … or (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (6).  *See Buggs v. Elgin, Joliet & Eastern Ry. Co,* 852 F.2d 318, 322 (7th Cir. 1988); *Quevedo v. Postmaster, U.S. Postal Serv.*, 774 F. Supp. 837, 838 (S.D.N.Y. 1991).

themselves as an excuse to replead in *Nakahata I*.  Such tactics should not be rewarded.  *Cf. Stewart Sec. Corp. v. Guaranty Trust Co.*, 71 F.R.D. 32, 34 (W.D. Okla. 1976) ("A party remains under a duty to take legal steps to protect his interests.")

## IV.    Conclusion

For the foregoing reasons, Defendants respectfully request that their Petition for Rehearing *En Banc* be granted and, upon rehearing, the Court (1) vacate the Decision; and (2) affirm the January 28, 2011 Opinion & Order of the District Court in its entirety.  In addition, the Panel's decision to remand to allow Plaintiffs to replead their wage claims in order to attempt to meet the requirements of *Lundy*, overlooked the fact that Plaintiffs failed to plead sufficient facts to keep the two individual Defendant senior executives in the case.  The Decision should be reversed in this regard and the dismissal of claims against the individual Defendants should be affirmed.

New York, New York
July 24, 2013

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By:  /s/ Kenneth J. Kelly
     Kenneth J. Kelly
     James S. Frank
     Kenneth W. DiGia
  250 Park Avenue
  New York, New York  10177-1211
  (212) 351-4500
  Attorneys for Defendants-Appellees

**ADDENDUM**

11-0734-cv, 11-0710-cv, 11-0713-cv, 11-0728-cv
Nakahata, et al., v. New York-Presbyterian Healthcare System, Inc., et al.

1          **UNITED STATES COURT OF APPEALS**
2
3               **FOR THE SECOND CIRCUIT**
4
5                   August Term, 2012
6
7       (Argued: November 9, 2012    Decided: July 11, 2012)
8
9          Docket Nos. 11-0734, 11-0710, 11-0713, 11-0728
10
11    - - - - - - - - - - - - - - - - - - -x
12
13    MASAHIRO NAKAHATA, on behalf of herself and all other employees
14    similarly situated, DIANA GARDOCKI, on behalf of herself and all
15    other employees similarly situated,
16
17               Plaintiffs-Appellants,
18
19    DIANE LEE SUSSMAN, STEVIE HARISTON, CAROLE TASSY, MARY MAHONEY,
20    LINDA MARRONE, MARY OLDAK, VOLVICK DESIL, STEPHANIE UHRIG,
21
22               Plaintiffs,
23
24          - v.-
25
26    NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., HERBERT PARDES,
27    NEW YORK AND PRESBYTERIAN HOSPITAL, WAYNE OSTEN,
28
29               Defendants-Appellees,
30
31    NEW YORK-PRESBYTERIAN FUND, INC., NEW YORK-PRESBYTERIAN
32    HOSPITAL, BROOKLYN HOSPITAL CENTER, HOLY NAME HOSPITAL, INC.,
33    HOLY NAME MEDICAL CENTER, LAWRENCE HOSPITAL CENTER, MARY IMOGENE
34    BASSETT, ONAL CARE NEW MILFORD HOSPITAL, INC., NEW YORK
35    COMMUNITY HOSPITAL OF BROOKLYN, INC., NEW YORK DOWNTOWN
36    HOSPITAL, NEW YORK HOSPITAL MEDICAL CENTER OF QUEENS, NEW YORK
37    METHODIST HOSPITAL, WESTCHESTER SQUARE MEDICAL CENTER, INC.,
38    NYACK HOSPITAL, PALISADES MEDICAL CENTER, STAMFORD HOSPITAL,
39    VALLEY HOSPITAL, WHITE PLAINS MEDICAL CENTER, WINTHROP-
40    UNIVERSITY HOSPITAL, WYCHOFF HEIGHTS MEDICAL CENTER, ST. MARY'S
41    HEALTHCARE SYSTEM FOR CHILDREN, INC., A. SOLOMON TORRES, NEW
42    YORK SOCIETY FOR THE RELIEF OF THE RUPTURED AND CRIPPLED,
43    MAINTAINING THE HOSPITAL FOR SPECIAL SURGERY, MARY IMOGENE
44    BASSETT HOSPITAL, NEW MILFORD HOSPITAL, INC., NORTHERN
45    WESTCHESTER HOSPITAL ASSOCIATION, WHITE PLAINS HOSPITAL MEDICAL

CENTER, WYCKOFF HEIGHTS MEDICAL CENTER, NEW YORK GRACIE SQUARE
HOSPITAL, INC., AMSTERDAM NURSING HOME CORPORATION,

                    Defendants.

- - - - - - - - - - - - - - - - - - - -x

JONATHAN YARUS, on behalf of themselves and all other employees
similarly situated, MOHAMED ALI, on behalf of himself and all
other employees similarly situated,

                    Plaintiffs-Appellants,

LLOYD BLACKWOOD, on behalf of themselves and all other employees
similarly situated, MARTIN UKEJE, TAE JOO KIM, SHARON CAMPBELL,
JEROME CROMWELL, HELENA ACHAMPONG, ERNESTINE DANIEL, VOLVICK
DESIL, STEPHANIE UHRIG, GAIL WHICKUM,

                    Plaintiffs,

         - v.-

NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, BELLEVUE
HOSPITAL CENTER, KINGS COUNTY HOSPITAL CENTER, JACOBI MEDICAL
CENTER, ELMHURST HOSPITAL CENTER, HARLEM HOSPITAL CENTER,
METROPOLITAN HOSPITAL CENTER, ALAN D. AVILES, LINCOLN MEDICAL
AND MENTAL HEALTH CENTER, NORTH CENTRAL BRONX HOSPITAL, CONEY
ISLAND HOSPITAL, WOODHULL MEDICAL AND MENTAL HEALTH CENTER,
QUEENS HOSPITAL CENTER,

                    Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - -x

PATRICIA MEGGINSON, on behalf of herself and all other employees
similarly situated,

                    Plaintiff-Appellant,

HELEN BRUGGER, on behalf of herself and all other employees
similarly situated, MARY OLDAK, MICHELLE ALVAREZ, STEPHANIE
UHRIG,

                    Plaintiffs,

         - v.-

```
1  WESTCHESTER COUNTY HEALTH CARE CORPORATION, WESTCHESTER MEDICAL
2  CENTER, MARIA FARERI CHILDREN'S HOSPITAL, MICHAEL D. ISRAEL,
3  PAUL S. HOCKENBERG,
4
5              Defendants-Appellees,
6
7  KERRY ORISTANO, PAULA REDD ZEMAN,
8
9              Defendants.
10
11 - - - - - - - - - - - - - - - - - - - -x
12
13 OLUSOLA ALAMU, on behalf of himself and all other employees
14 similarly situated, JACQUELINE COOPER-DAVIS, on behalf of
15 herself and all other employees similarly situated,
16
17              Plaintiffs-Appellants,
18
19          - v.-
20
21 BRONX-LEBANON HOSPITAL CENTER, INCORPORATED, BRONX-LEBANON
22 HOSPITAL CENTER-FULTON DIVISION, BRONX-LEBANON HOSPITAL CENTER-
23 CONCOURSE DIVISION, MIGUEL A. FUENTES, JR., SHELDON ORTSMAN,
24
25              Defendants-Appellees,
26
27 SELENA GRIFFIN-MAHON,
28
29              Defendant.*
30
31  - - - - - - - - - - - - - - - - - - - -x
32
33
34      Before:   LOHIER, Circuit Judge, POGUE, Judge**
```

---

      * The Clerk of the Court is directed to amend the official caption as shown above.

      ** Donald C. Pogue, Chief Judge of the United States Court of International Trade, sitting by designation.  Debra A. Livingston, Circuit Judge, recused herself before oral argument. The two remaining members of the panel, who are in agreement, have decided this case in accordance with Second Circuit Internal Operating Procedure E(b).

1    Plaintiffs-Appellants in four related cases appeal from a

2    single order of the United States District Court for the

3    Southern District of New York (Crotty, J.) dismissing their

4    claims that Defendants-Appellees violated the Fair Labor

5    Standards Act, New York Labor Law, Racketeer Influenced and

6    Corrupt Organizations Act, and New York common law.  For the

7    following reasons, the judgment is affirmed in part, vacated in

8    part, and remanded.

9                              MICHAEL J. LINGLE (Guy A. Talia,
10                             J. Nelson Thomas, on the brief),
11                             Thomas & Solomon LLP, Rochester,
12                             New York, for Appellants.
13
14                             JAMES S. FRANK (Kenneth W. DiGia,
15                             Kenneth J. Kelly, on the brief),
16                             Epstein Becker & Green, P.C., New
17                             York, New York, (Terence K.
18                             McLaughlin, Willkie Farr &
19                             Gallagher LLP, New York, New York,
20                             on the brief), for Appellees New
21                             York-Presbyterian Healthcare
22                             System, Inc., et al.
23
24                             VICTORIA SCALZO, Assistant
25                             Corporation Counsel of the City of
26                             New York, New York, New York
27                             (Kristin M. Helmers, Blanche
28                             Greenfield, on the brief), for
29                             Michael A. Cardozo, Corporation
30                             Counsel of the City of New York,
31                             for Appellees New York City Health
32                             and Hospitals Corporation, et al.
33
34                             LEONARD M. ROSENBERG and SALVATORE
35                             PUCCIO (Lauren M. Levine, on the
36                             brief), Garfunkel Wild, P.C.,
37                             Great Neck, New York, for
38                             Appellees Westchester County
39                             Healthcare Corp., et al.

4

                              NANCY V. WRIGHT (Ricki E. Roer,
                              Scott R. Abraham, <u>on the brief</u>),
                              Wilson Elser Moskowitz Edelman &
                              Dicker LLP, New York, New York,
                              <u>for Appellee Bronx-Lebanon
                              Hospital Center, Inc., et al.</u>

POGUE, <u>Judge</u>:

    This is an appeal from an order by the United States

District Court for the Southern District of New York dismissing

the complaint in each of four cases: <u>Nakahata v. New York-

Presbyterian Healthcare System, Inc.</u>, No. 10 Civ. 2661; <u>Yarus v.

New York City Health and Hospitals Corp.</u>, No. 10 Civ. 2662;

<u>Megginson v. Westchester Medical Center</u>, No. 10 Civ. 2683; and

<u>Alamu v. The Bronx-Lebanon Hospital Center, Inc.</u>, No. 10 Civ.

3247. <u>Nakahata v. New York-Presbyterian Healthcare Sys., Inc.</u>,

2011 WL 321186 (S.D.N.Y. Jan. 28, 2011) ("<u>Nakahata I</u>").

Plaintiffs — current and former healthcare employees — allege

that the Defendants — healthcare systems, hospitals, corporate

heads, and affiliated entities — violated the Fair Labor

Standards Act ("FLSA"), New York Labor Law ("NYLL"), Racketeer

Influenced and Corrupt Organizations Act ("RICO"), and New York

common law by failing to compensate Plaintiffs for work

performed during meal breaks, before and after scheduled shifts,

and during required training sessions.  The District Court

dismissed the four complaints in their entirety for failing to

1  state a claim pursuant to Federal Rule of Civil Procedure

2  12(b)(6).

3       We affirm in part the District Court's decision and remand

4  in part.  We affirm the dismissal, with prejudice, of the FLSA

5  gap-time, RICO, and certain common law claims.  We also affirm

6  the dismissal of the FLSA and NYLL overtime claims, but we

7  remand these claims with leave to replead.  We reserve judgment

8  on the dismissal of the NYLL gap-time claims and remand for

9  reconsideration.  Finally, we vacate the dismissal of certain

10 common law claims and remand with leave to replead.

11

12                         **BACKGROUND**

13      The four cases before us on appeal are but a few among many

14 such actions brought by a single law firm, Thomas & Solomon LLP,

15 and premised on a stock set of allegations concerning

16 underpayment in the healthcare industry.  This is the second

17 decision of this Court addressing these allegations, following

18 the recent opinion in Lundy v. Catholic Health System of Long

19 Island Inc., 711 F.3d 106 (2d Cir. 2013).  Several related cases

20 remain pending before this Court.[1]

---

[1] See Hinterberger v. Catholic Health Sys., Inc., No. 12-0630; Hinterberger v. Catholic Health Sys., Inc., No. 12-0918; Gordon v. Kaleida Health, No. 12-0654; Gordon v. Kaleida Health, 12-0670; Nakahata v. New York-Presbyterian Healthcare Sys., Inc., No. 12-4128; Megginson v. Westchester Med. Ctr., No. 12-4084; Alamu v. The Bronx-Lebanon Hosp. Ctr., No. 12-4085.

6

The parties are healthcare workers, on behalf of a putative class, and their alleged employers. The named Plaintiffs, identified only as "employees" or "employees of the defendants," are Masahiro Nakahata and Diana Gardocki, Nakahata 2d Am. Compl. ¶ 62; Patricia Megginson, Megginson Am. Compl. ¶ 61; Olusola Alamu and Jacqueline Cooper-Davis, Alamu Am. Compl. ¶ 64; and Jonathan Yarus and Mohamed Ali, Yarus Am. Compl. ¶ 52. Plaintiffs filed their suits as putative collective and class actions on behalf of "those employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked." Alamu Am. Compl. ¶ 65; Megginson Am. Compl. ¶ 62; Nakahata 2d Am. Compl. ¶ 63; Yarus Am. Compl. ¶ 53. The Defendants named in the complaints include corporate healthcare systems, individual hospitals in those systems, persons in corporate leadership roles, and affiliated healthcare facilities.[2]

---

[2] Named Defendants include (1) The Bronx-Lebanon Hospital Center, The Bronx-Lebanon Hospital Center-Fulton Division, The Bronx-Lebanon Hospital Center-Concourse Division, Miguel A. Fuentes, Jr. (President and CEO of Bronx-Lebanon Hospital Center), and Sheldon Ortsman (former Vice President of the Human Resources Division of Bronx-Lebanon Hospital Center), Alamu Am. Compl. ¶¶ 18, 40, 52; (2) Westchester Medical Center, Westchester County Health Care Corporation, Maria Fareri Children's Hospital at Westchester Medical Center, Michael D. Israel (President and CEO of Westchester Medical Center), and Paul S. Hochenberg (Senior Vice President of Human Resources for Westchester Medical Center), Megginson Am. Compl. ¶¶ 18, 41, 51;

1    Plaintiffs allege that it is Defendants' policy not to pay

2    employees for all hours worked, including some overtime hours.

3    In particular, Plaintiffs allege: (1) Defendants have a policy

4    of automatically deducting time for meal breaks from employees'

5    paychecks despite consistently requiring employees to work

6    during meal breaks; (2) employees engage in work activities both

7    before and after their shift without compensation; and (3)

8    Defendants require employees to attend training sessions for

9    which they are not compensated.  Based on these allegations,

10   Plaintiffs seek to recover unpaid compensation pursuant to the

11   FLSA, NYLL,[3] and New York common law.  Plaintiffs further allege

---

(3) New York-Presbyterian Healthcare System, Inc., The New York
and Presbyterian Hospital, Herbert Pardes (President and CEO of
New York-Presbyterian Healthcare System), and Wayne Osten
(Senior Vice President and Director for New York-Presbyterian
Healthcare System), Nakahata 2d Am. Compl. ¶¶ 18, 41, 51; and
(4) New York City Health and Hospitals Corporation, Bellevue
Hospital Center, Kings County Hospital Center, Jacobi Medical
Center, Elmhurst Hospital Center, Harlem Hospital Center,
Metropolitan Hospital Center, Lincoln Medical and Mental Health
Center, North Central Bronx Hospital, Coney Island Hospital,
Woodhull Medical and Mental Health Center, Queens Hospital
Center, and Alan D. Aviles (President and CEO of New York City
Health and Hospitals Corporation), Yarus Am. Compl. ¶¶ 18, 39.
        Plaintiffs' complaints also include extensive lists of
affiliated healthcare facilities that Plaintiffs allege are
under the operational control of the named Defendants. See Alamu
Am. Compl. ¶¶ 19-20; Megginson Am. Compl. ¶¶ 19-20; Nakahata 2d
Am. Compl. ¶¶ 19-20; Yarus Am. Compl. ¶¶ 19-20.  These lists
comprise several dozen entities and do not require reproduction
in full.

        [3] Plaintiffs in Yarus v. New York City Health and Hospitals
Corp., No. 11-0710, withdrew their NYLL claims prior to the
District Court's decision. Pls.' Mem. L. Opp'n Defs.' Mot.

1  that their paychecks were misleading and part of a fraudulent

2  scheme to hide the underpayment in violation of RICO and New

3  York common law.

4      Defendants moved the District Court to dismiss the

5  complaint in each case for failure to state a claim.  The

6  District Court, observing that all four complaints "contain[ed]

7  strikingly similar allegations and deficiencies," Nakahata I,

8  2011 WL 321186 at *1, issued a single opinion dismissing each

9  complaint in its entirety and terminating all four cases. Id. at

10  *7.  The District Court permitted Plaintiffs to file new actions

11  repleading the FLSA and NYLL claims, but it did not permit

12  refiling of the RICO and common law claims. Id. at *6–7.

13  Plaintiffs both appealed the District Court's decision and filed

14  new actions alleging claims pursuant to the FLSA and NYLL.

15

16              **JURISDICTION & STANDARD OF REVIEW**

17      The District Court had original jurisdiction over

18  Plaintiffs' FLSA and RICO claims pursuant to 28 U.S.C. § 1331

19  (2006). See 29 U.S.C. § 216(b) (2006) (creating a civil right of

20  action for violation of the FLSA); 18 U.S.C. § 1964(c) (2006)

21  (creating a civil right of action for violation of RICO).  The

22  District Court had supplemental jurisdiction over the NYLL and

Dismiss at 1 n.1, Nakahata I, 2011 WL 321186 (No. 10 Civ. 2662),
ECF No. 96.  Therefore, our decision with regard to the NYLL
claims does not apply to the Plaintiffs in Yarus.

1  common law claims pursuant to 28 U.S.C. § 1367.  We have

2  jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

3       We review a dismissal for failure to state a claim de novo.

4  Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  When reviewing

5  the sufficiency of the complaint, we take all factual

6  allegations as true and draw all reasonable inferences in the

7  plaintiff's favor.  Id.

8       A well-pled complaint "must contain sufficient factual

9  matter, accepted as true, to 'state a claim to relief that is

10  plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

11  (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

12  (2007)); see also Harris, 572 F.3d at 71–72.  To be plausible,

13  the complaint need not show a probability of plaintiff's

14  success, but it must evidence more than a mere possibility of a

15  right to relief.  Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at

16  556.  Determining plausibility is a context specific endeavor,

17  see Starr v. Sony BMG Music Entm't, 592 F.3d 314, 328–29 (2d

18  Cir. 2010) (Newman, J., concurring), that requires the court to

19  draw upon its experience and common sense, Iqbal, 556 U.S. at

20  679.

21       Allegations of fraud are subject to a heightened pleading

22  standard.  When alleging fraud, "a party must state with

23  particularity the circumstances constituting fraud," Fed. R.

24  Civ. P. 9(b), which we have repeatedly held requires the

10

1  plaintiff to "(1) specify the statements that the plaintiff

2  contends were fraudulent, (2) identify the speaker, (3) state

3  where and when the statements were made, and (4) explain why the

4  statements were fraudulent." Mills v. Polar Molecular Corp., 12

5  F.3d 1170, 1175 (2d Cir. 1993) (citing Cosmas v. Hassett, 886

6  F.2d 8, 11 (2d Cir. 1989)); see also Anatian v. Coutts Bank

7  (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999).  In addition, the

8  plaintiff must "allege facts that give rise to a strong

9  inference of fraudulent intent." First Capital Asset Mgmt., Inc.

10  v. Satinwood, Inc., 385 F.3d 159, 179 (2d Cir. 2004) (citation

11  omitted).

12

13                          **DISCUSSION**

14       On appeal, Plaintiffs challenge the dismissal of the FLSA

15  and NYLL claims, dismissal of the common law claims, dismissal

16  of the RICO claims, and the determination that there was no

17  basis for a collective or class action.  Plaintiffs have also

18  requested assignment of a new district court judge on remand.

19  Before discussing these challenges, however, we address

20  Plaintiffs' argument that the District Court improperly denied

21  leave to amend the complaints.

22

23

24

11

**I**

1   We review a district court's denial of leave to amend for

2   abuse of discretion. See Anatian, 193 F.3d at 89. As a general

3   principle, district courts should freely grant a plaintiff leave

4   to amend the complaint. Kleinman v. Elan Corp., 706 F.3d 145,

5   156 (2d Cir. 2013). Nonetheless, "we will not deem it an abuse

6   of the district court's discretion to order a case closed when

7   leave to amend has not been sought." Anatian, 193 F.3d at 89

8   (quoting Campaniello Imps., Ltd. v. Saporiti Italia, S.p.A., 117

9   F.3d 655, 664-65 n.3 (2d Cir. 1997)) (internal quotation marks

10  omitted). Nor will we upset a decision denying leave to amend

11  if the denial was harmless error. See In re "Agent Orange" Prod.

12  Liability Litig., 517 F.3d 76, 104 (2d Cir. 2008).

13  While we will not upset a denial of leave to amend where

14  the plaintiff failed to seek such leave, the record in this case

15  indicates that Plaintiffs were not provided an opportunity to

16  seek leave to amend in response to the District Court's order of

17  dismissal. The District Court ordered the cases terminated with

18  no indication that final judgment should await a motion for

19  leave to amend. See Nakahata I, 2011 WL 321186, at *7. The

20  clerk of the court entered final judgment the next business day

21  after the opinion was issued. Judgment, Special App. to Nakahata

22  Pls.' Br. 15. Absent an opportunity to seek leave to amend,

12

1  Plaintiffs cannot be held accountable for failing to make the

2  necessary motion.

3       Nor can we deem this error harmless.  The District Court

4  did permit Plaintiffs to refile their FLSA and NYLL claims in a

5  new action, which obviated much – but not all – of the prejudice

6  Plaintiffs experienced from the denial of leave to amend.  The

7  option to file a new action preserved the FLSA and NYLL claims

8  that remained timely on the date the new action was filed, but

9  Plaintiffs lost the opportunity to pursue claims that became

10 time-barred pursuant to the statute of limitations[4] in the

11 interim between the filing of the original complaints and the

12 filing of the new complaints.  The cause of action for FLSA and

13 NYLL claims accrues on the next regular payday following the

14 work period when services are rendered. 29 C.F.R. § 790.21(b)

15 (2012) (last revision 1947 Supp.); see also Rigopoulos v.

16 Kervan, 140 F.2d 506, 507 (2d Cir. 1943); McMahon v. State, 19

17 N.Y.S.2d 639, 642 (N.Y. Ct. Cl. 1940).  Because each paycheck

18 represents a potential cause of action, it is likely that the

19 statute of limitations expired on some causes of action in the

20 period between the filing of the original complaints and the

21 filing of the new complaints; therefore, some causes of action

---

[4] The limitations period for the FLSA is two years or, if
the violation was willful, three years. 29 U.S.C. § 255(a)
(2006).  The limitations period for the NYLL is six years. N.Y.
Lab. Law § 663(3) (McKinney 2002).

1  became time-barred upon termination of the original complaints.

2  In other words, every two, three, or six year anniversary of

3  payment – depending on the statute of limitations applicable –

4  that fell within the period between filing of the original

5  complaints and filing of the new complaints was the occasion of

6  a lost cause of action.[5]  Because Plaintiffs were prejudiced

7  through lost causes of action resulting from the termination of

8  the original complaints, we hold that the District Court abused

9  its discretion in not permitting Plaintiffs to file an amended

10 complaint.[6]

---

[5] This assumes that Plaintiffs were employed by Defendants
prior to the statute of limitations period, a fact which is not
pled in the complaints.  This is a serious deficiency in the
complaints, but, as discussed above, Plaintiffs should be
provided the opportunity to amend lest they be time-barred from
pursuing legitimate claims.

[6] Plaintiffs did pursue those FLSA and NYLL claims that were
not time-barred by filing new actions in the Southern District
of New York: Nakahata v. New York-Presbyterian Healthcare
System, Inc., No. 11 Civ. 6658; Megginson v. Westchester Medical
Center, No. 11 Civ. 6657; Alamu v. The Bronx-Lebanon Hospital
Center, No. 11 Civ. 6366; and Ali v. New York City Health and
Hospitals Corp., 11 Civ. 6393.
   The District Court again dismissed three of these actions,
Nakahata, Megginson, and Alamu, for failure to state a claim,
Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 2012 WL
3886555 (S.D.N.Y. Sept. 6, 2012) ("Nakahata II"), and the
Nakahata II decision is currently before this Court on appeal in
Nakahata v. New York-Presbyterian Healthcare System, Inc., No.
12-4128; Megginson v. Westchester Medical Center, No. 12-4084;
and Alamu v. The Bronx-Lebanon Hospital Center, No. 12-4085.
The complaints filed in the cases heard collectively as Nakahata
II are more detailed than those filed in the cases heard
collectively as Nakahata I, and those more detailed allegations
may address some of the deficiencies discussed below.  Because

14

**II**

Plaintiffs allege twelve claims in their complaints, but the heart of their case is the allegation that Defendants failed to compensate them appropriately for all hours worked in violation of the FLSA and NYLL.  Plaintiffs allege broadly that "Plaintiffs and Class members regularly worked hours both under and in excess of forty per week and were not paid for all of those hours." Alamu Am. Compl. ¶ 148; Megginson Am. Compl. ¶ 145; Nakahata 2d Am. Compl. ¶ 146; Yarus Am. Compl. ¶ 136. Plaintiffs' allegation that Defendants did not compensate them for hours worked in excess of forty per week alleges an overtime claim, whereas their allegation that Defendants did not compensate them for hours worked under forty per week alleges a gap-time claim.

---

the more detailed complaints will be tested by this Court in its review of Nakahata II, the District Court may appropriately stay proceedings in this case on remand, pending the outcome of our decision in Nakahata II.

The fourth action filed in response to Nakahata I, Ali, remains pending before the District Court.  That case was filed by one, but not both, of the named plaintiffs in Yarus.  In this regard, Plaintiff Ali is in a position similar to that of the plaintiffs in the three cases discussed above.  Plaintiff Yarus has no second case pending either in the District Court or before this Court, but his claims have been preserved through appeal.  As a result, on remand the time period for which causes of action are available may be different for Plaintiffs Ali and Yarus because Plaintiff Ali has pursued some causes of action in a separate case, whereas Plaintiff Yarus has not.

15

1      The District Court dismissed both the FLSA and NYLL claims

2    for lack of sufficient factual allegations.  In particular, the

3    District Court found three categories of facts lacking: (1) when

4    unpaid wages were earned and the number of hours worked without

5    compensation; (2) specific facts of employment including dates

6    of employment, pay, and positions; and (3) the entity that

7    directly employed the Plaintiffs. Nakahata I, 2011 WL 321186,

8    at *4.  Although the overtime and gap-time claims were dismissed

9    on the same grounds, we will discuss the claims separately.

10     The FLSA mandates that an employee engaged in interstate

11   commerce be compensated at a rate of no less than one and one-

12   half times the regular rate of pay for any hours worked in

13   excess of forty per week,[7] 29 U.S.C. § 207(a) (2006); the NYLL

14   adopts this same standard, N.Y. Comp. Codes R. & Regs. tit. 12,

15   § 142-2.2 (2011) (incorporating the FLSA definition of overtime

16   into the NYLL).  As noted in the recent decision, Lundy v.

17   Catholic Health System of Long Island Inc., 711 F.3d 106, 114

18   (2d Cir. 2013), "to survive a motion to dismiss [an FLSA

19   overtime claim], Plaintiffs must allege sufficient factual

20   matter to state a plausible claim that they worked compensable

21   overtime in a workweek longer than 40 hours."

---

[7] The FLSA also permits employers and employees in the
healthcare field to agree that overtime will be calculated on
the basis of eighty hours worked over two weeks instead of forty
hours worked over one week. 29 U.S.C. § 207(j) (2006).

16

1    Prior to the decision in Lundy, we had not considered the

2    degree of specificity necessary to state an FLSA overtime claim

3    – an issue that has divided courts around the country, see

4    Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662, 667–68 (D.

5    Md. 2011) (discussing the varying levels of specificity required

6    in different jurisdictions).  After reviewing the disparate case

7    law on this question, Lundy "conclude[d] that in order to state

8    a plausible FLSA overtime claim, a plaintiff must sufficiently

9    allege 40 hours of work in a given workweek as well as some

10   uncompensated time in excess of the 40 hours." Lundy, 711 F.3d

11   at 114.

12       Lundy was an appeal from an Eastern District of New York

13   decision dismissing essentially the same allegations presented

14   in this case.[8]  The plaintiffs in Lundy filed several amended

15   complaints in the district court; therefore, the claims were

16   pled with greater factual specificity than the complaints now

17   before us.  In particular, the Lundy complaint pled the number

18   of hours the plaintiffs were typically scheduled to work in a

19   week. See id. at 114–15.  Given the number of hours worked in a

20   typical week and the alleged time worked without pay, Lundy

---

[8] Some of the claims raised in this case were not raised in
Lundy, as will be discussed in detail below; however, the core
claims of both cases – FLSA, NYLL, and RICO claims premised on
unpaid hours worked during lunch breaks, before and after
shifts, and at required trainings – are the same. Lundy, 711 at
113.

1  concluded that the plaintiffs could not plausibly allege work in

2  excess of 40 hours in any given week;[9] therefore, <u>Lundy</u> affirmed

3  the district court's dismissal.

4      The complaints currently before us contain no similar

5  specificity.[10]  Plaintiffs have merely alleged that they were not

6  paid for overtime hours worked.  These allegations – that

7  Plaintiffs were not compensated for work performed during meal

8  breaks, before and after shifts, or during required trainings –

---

[9] For example, one of the <u>Lundy</u> plaintiffs alleged that she
was typically scheduled to work 37.5 hours per week over three
shifts with an additional 12.5 hour shift on occasion.  She
further alleged that she typically worked through her 30 minute
meal break, worked an additional 15 minutes before or after her
scheduled shift, and was required to attend monthly staff
training of 30 minutes and an additional respiratory therapy
training totaling 10 hours per year.  Assuming she missed a meal
and worked an additional 15 minutes every shift, the <u>Lundy</u> court
deduced that she had alleged a total of only 39 hours and 45
minutes per week of work. Therefore, she had failed to allege
work in excess of 40 hours in any given week. <u>Id.</u> at 114–15.

[10] Although the complaints currently before us clearly do
not meet the <u>Lundy</u> standard, we should note that the standard
employed by the District Court in this case was more demanding
than that employed in <u>Lundy</u>. <u>Compare</u> <u>Nakahata I</u>, 2011 WL 321186,
at *4 ("At a minimum, [the complaint] must set forth the
approximate number of unpaid regular and overtime hours
allegedly worked."), <u>with</u> <u>Lundy</u>, 711 F.3d at 114 ("[A] plaintiff
must sufficiently allege 40 hours of work in a given workweek as
well as some uncompensated time in excess of the 40 hours.").
    While the standard we reaffirm today does not require an
approximate number of overtime hours, we reiterate that
determining whether a claim is plausible is "a context-specific
task that requires the reviewing court to draw on its judicial
experience and common sense," <u>Lundy</u>, 711 F.3d at 114 (quoting
<u>Iqbal</u>, 556 U.S. at 679), and that "[u]nder a case-specific
approach, some courts may find that an approximation of overtime
hours worked may help draw a plaintiff's claim closer to
plausibility," <u>id.</u> at 114 n.7.

1  raise the possibility that Plaintiffs were undercompensated in

2  violation of the FLSA and NYLL; however, absent any allegation

3  that Plaintiffs were scheduled to work forty hours in a given

4  week, these allegations do not state a plausible claim for such

5  relief.  To plead a plausible FLSA overtime claim, plaintiffs

6  must provide sufficient detail about the length and frequency of

7  their unpaid work to support a reasonable inference that they

8  worked more than forty hours in a given week.  For these

9  reasons, the District Court properly dismissed the FLSA and NYLL

10  overtime claims.

11      Because we hold that the Plaintiffs failed to plead

12  sufficient facts to make it plausible that they worked

13  uncompensated hours in excess of 40 in a given week, we need not

14  decide whether the District Court's other bases for dismissal

15  were proper.  Nonetheless, because we will remand this claim for

16  amended pleadings, we note that Plaintiffs' actual and direct

17  employer is an essential element of notice pleading under these

18  circumstances.  What aspects of Plaintiffs' position, pay, or

19  dates of employment are necessary to state a plausible claim for

20  relief consistent with this decision and Lundy is a case-

21  specific inquiry for the trial court.  Iqbal, 556 U.S. at 679.

22  As the District Court noted, however, generalized allegations

23  that may prove false at trial are not necessarily the basis for

19

1   dismissal at the pleadings stage. See Nakahata I, 2011 WL

2   321186, at *4 n.11.

3       While Plaintiffs' overtime claims fail for the reasons

4   discussed above, their allegations can also be read to state a

5   gap-time claim.  Gap-time claims are those "in which an employee

6   has not worked 40 hours in a given week but seeks recovery of

7   unpaid time worked, or in which an employee has worked over 40

8   hours in a given week but seeks recovery for unpaid work under

9   40 hours." Lundy, 711 F.3d at 115.

10      As discussed in Lundy, the FLSA does not provide a cause of

11  action for unpaid gap time. Id. at 116–17.  The FLSA statute

12  requires payment of minimum wages and overtime wages only, see

13  29 U.S.C. §§ 201–19 (2006); therefore, the FLSA is unavailing

14  where wages do not fall below the statutory minimum and hours do

15  not rise above the overtime threshold. Lundy, 711 F.3d at 115.

16  The FLSA is unavailing even when an employee works over 40 hours

17  per week and claims gap-time wages for those hours worked under

18  40 per week, unless the wages fall below the minimum threshold.

19  This is because the statutory language simply does not

20  contemplate a claim for wages other than minimum or overtime

21  wages. Id. at 116–17.  For this reason, we affirm the District

22  Court's dismissal with prejudice of any gap-time claims made

23  pursuant to the FLSA.

1    Plaintiffs may, however, have a gap-time claim pursuant to

2    the NYLL.  Lundy acknowledged, without deciding, that a gap-time

3    claim would be consistent with the language of NYLL § 663(1),

4    which states that "[i]f any employee is paid by his or her

5    employer less than the wage to which he or she is entitled . . .

6    he or she shall recover in a civil action the amount of any such

7    underpayments . . . ." N.Y. Lab. Law § 663(1) (McKinney Supp.

8    2012), as amended by Wage Theft Prevention Act, ch. 564, § 16,

9    2010 N.Y. Sess. Laws 1446, 1457 (McKinney); Lundy, 711 F.3d at

10   118.  Lundy remanded the NYLL gap-time claim because, while the

11   District Court had acknowledged the possibility of such a claim,

12   it inconsistently dismissed all of the NYLL claims with

13   prejudice. Lundy, 711 F.3d at 118.

14    In this case, the District Court dismissed the gap-time

15   claims on the same basis as the overtime claims without

16   acknowledging the separate standard for a gap-time claim.

17   Unlike an overtime claim, a gap-time claim requires no predicate

18   showing of minimum hours worked; rather, an allegation of hours

19   worked without compensation may give rise to a gap-time claim.

20   Nonetheless, in the first instance it is for the trial court to

21   decide whether the allegations in the complaints are plausible.

22   Because the District Court did not consider the NYLL gap-time

23   claims separately from the overtime claims, and because

24   Plaintiffs will have an opportunity to amend their pleadings, we

1   remand the NYLL gap-time claims to the District Court to

2   consider in light of any amended pleadings.

3

4                          **III**

5       In addition to their FLSA and NYLL claims, Plaintiffs

6   allege nine common law claims.[11]  The District Court dismissed

7   the common law clams with prejudice on the grounds that they

8   were preempted by collective bargaining agreements and on the

9   basis of pleading deficiencies unique to each claim.[12]  We

10  address these arguments in turn.

11      The District Court dismissed the common law claims as

12  preempted by applicable collective bargaining agreements

13  ("CBAs") and § 301 of the Labor Management Relations Act

14  ("LMRA"), 29 U.S.C. § 185 (2006). Nakahata I, 2011 WL 321186, at

15  *2, *6.  No CBAs were pled or attached to the complaints;

16  rather, the Defendants attached the CBAs, or relevant portions

17  thereof, to their motions to dismiss.

---

[11] Plaintiffs allege (1) breach of an implied oral contract,
(2) breach of an express oral contract, (3) breach of an implied
covenant of good faith and fair dealing, (4) quantum meruit,
(5) unjust enrichment/restitution, (6) fraud, (7) negligent
misrepresentation, (8) conversion, and (9) estoppel. Nakahata I,
2011 WL 321186, at *1 n.3.

[12] The parties also addressed FLSA preemption of the common
law claims in their briefs; however, FLSA preemption was only
given cursory treatment in the District Court's opinion and was
not essential to the disposition.  Therefore, we do not address
FLSA preemption.

1    We do not consider matters outside the pleadings in

2  deciding a motion to dismiss for failure to state a claim.

3  Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150,

4  154-55 (2d Cir. 2006).  Rather, where matter outside the

5  pleadings is offered and not excluded by the trial court, the

6  motion to dismiss should be converted to a motion for summary

7  judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule

8  12(b)(6) or 12(c), matters outside the pleadings are presented

9  to and not excluded by the court, the motion must be treated as

10 one for summary judgment under Rule 56.").  "As indicated by the

11 word 'shall,' the conversion of a Rule 12(b)(6) motion into one

12 for summary judgment under Rule 56 when the court considers

13 matters outside the pleadings is strictly enforce[d] and

14 mandatory." Global Network Commc'ns, 458 F.3d at 155 (citations

15 omitted) (internal quotation marks omitted).  Because the CBAs

16 at issue here were submitted with Defendants' motions to

17 dismiss, and not excluded from consideration, the District Court

18 could have decided these issues pursuant to the summary judgment

19 standard of Rule 56, but it did not.  We cannot affirm the

20 dismissal on the basis of LMRA preemption pursuant to Rule

21 12(b)(6) because such dismissal was premised on matter outside

22 of the pleadings, and was, therefore, inappropriate. Id.

23    Nor do we agree with the District Court that Plaintiffs

24 were responsible for pleading the CBAs in the complaints.  The

23

1  plaintiff is master of the complaint and may assert state law

2  causes of action that are independent of the CBA. See

3  Caterpillar Inc. v. Williams, 482 U.S. 386, 394-95 (1987).  It

4  is a defendant's responsibility to raise preemption by the CBA

5  as a defense, but, as discussed above, a motion addressed to the

6  adequacy of the pleadings is not necessarily the proper place

7  for preemption to be decided. Cf. Drake v. Lab. Corp. of Am.

8  Holdings, 458 F.3d 48, 66 (2d Cir. 2006) ("For those claims for

9  which preemption cannot be easily determined from the pleadings,

10  our standard of review requires us to affirm the district

11  court's decision to deny the defendant-appellants' motion to

12  dismiss, with the understanding that the claims may ultimately

13  prove to be preempted at a later stage of the litigation.")

14  (emphasis added) (citation omitted) (internal quotation marks

15  omitted).[13]

_____

    [13] The District Court cited I. Meyer Pincus & Assocs. v.
Oppenheimer & Co., 936 F.2d 759 (2d Cir. 1991), for the
proposition that the CBAs should be considered because they are
integral to the issues raised in the complaint. Nakahata I, 2011
WL 321186, at *1 n.5.  In Pincus, we held that where the
plaintiff's claims were grounded solely in the language of a
prospectus, the prospectus was integral to the complaint and
would be considered in deciding a motion to dismiss despite not
having been attached to the complaint. Pincus, 936 F.2d at 762.
To do otherwise would have "create[d] a rule permitting a
plaintiff to evade a properly argued motion to dismiss simply
because plaintiff has chosen not to attach the prospectus to the
complaint or to incorporate it by reference." Id.
    Pincus, however, is distinguishable from this case.  Unlike
the complaint in Pincus, the complaints currently before us do
not ground their claims in the CBAs.  Nor, is it Plaintiffs'

24

1    The District Court also identified deficiencies unique to

2    each common law claim.  Some of the deficiencies may be

3    corrected through amended pleading.  We remand Plaintiffs'

4    claims for breach of express and implied oral contracts, <u>quantum</u>

5    <u>meruit</u>, and unjust enrichment for reconsideration in light of

6    any amended pleading.  The District Court's dismissal of those

7    claims relied on the existence of a collective bargaining

8    agreement, which was not included with the pleadings and could

9    not be considered on a motion to dismiss.  The claim for breach

10   of an implied covenant of good faith and fair dealing was

11   properly dismissed insofar as it duplicates the breach of

12   contract claims, <u>see</u> <u>Harris v. Provident Life and Accident Ins.</u>

13   <u>Co.</u>, 310 F.3d 73, 80 (2d Cir. 2002); however, if Plaintiffs can

14   state such a claim on a basis independent of the breach of

15   contract claims, they may do so in the amended pleading.

16   Plaintiffs' other common law claims are unavailing on the

17   facts of this case, and the dismissal with prejudice is

18   affirmed.  We affirm the District Court's dismissal with

19   prejudice of the fraud and negligent misrepresentation claims

20   premised on the mailing of paychecks for the same reasons

21   discussed below regarding the RICO claims.  Dismissal of the

---

responsibility to plead the CBAs.  In short, the CBAs are not
integral to the complaint in the same way that the prospectus in
<u>Pincus</u> was integral; rather, the CBAs have been raised as an
affirmative defense and can properly be considered on a motion
for summary judgment.

1  conversion claim with prejudice is affirmed because Plaintiffs

2  never had ownership, possession, or control of the wages in

3  question prior to the alleged conversion. See ESI, Inc. v.

4  Coastal Power Prod. Co., 995 F. Supp. 419, 433 (S.D.N.Y. 1998)

5  (recognizing that New York law requires prior ownership,

6  possession, or control to assert a claim for conversion).

7  Regarding estoppel, Plaintiffs assert that Defendants should be

8  estopped from asserting a statute of limitations defense.  It is

9  not entirely clear whether such a claim may be made in the

10  complaint or must be asserted in response to a statute of

11  limitations defense under New York law,[14] but we need not resolve

12  this issue.  The Plaintiffs may raise equitable estoppel in

13  response to a statute of limitations defense on remand;

14  therefore, they have suffered no prejudice in this regard, and

15  the dismissal was harmless error if error at all.

16      Therefore, the District Court's dismissal of the common law

17  claims with prejudice is affirmed in part and vacated in part.

18  Those claims that Plaintiffs may replead are remanded to the

19  District Court.

---

[14] Compare Tierney v. Omnicom Grp. Inc., No. 06 Civ. 14302,
2007 WL 2012412, at *10 (S.D.N.Y. July 11, 2007) (dismissing a
claim for estoppel because the court understood estoppel to be
an affirmative defense not a cause of action), with Forman v.
Guardian Life Ins. Co. of Am., 901 N.Y.S.2d 906 (Table), 2009 WL
3790200, at *5 (N.Y. Sup. Ct. Sept. 25, 2009) (recognizing an
equitable estoppel claim but relying on New York Appellate
Division cases that discuss equitable estoppel as an affirmative
defense).

1                                    **IV**

2        In addition to the claims for unpaid wages, Plaintiffs

3   allege that the Defendants committed mail fraud in violation of

4   RICO.  Plaintiffs allege that their paychecks, delivered through

5   the U.S. mail, misleadingly purported to pay Plaintiffs for all

6   hours worked.  Plaintiffs further allege that the purportedly

7   complete paychecks concealed a scheme by Defendants to

8   undercompensate the Plaintiffs.

9        RICO makes it unlawful "for any person employed by or

10  associated with any enterprise . . . to conduct or participate,

11  directly or indirectly, in the conduct of such enterprise's

12  affairs through a pattern of racketeering activity . . . ." 18

13  U.S.C. § 1962(c) (2006); First Capital Asset Mgmt., Inc. v.

14  Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004).  Mail fraud,

15  pursuant to 18 U.S.C. § 1341, is among the activities defined as

16  racketeering. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 482

17  n.3 (1985) (quoting 18 U.S.C. § 1961(1) (1982 ed., Supp. III)).

18       The District Court dismissed the RICO claims because the

19  paychecks did not perpetuate a fraud; rather, they disclosed any

20  alleged underpayment. Nakahata I, 2011 WL 321186, at *5.  Lundy

21  endorsed this reasoning, holding that the "mailing of pay stubs

22  cannot further the fraudulent scheme because the pay stubs would

23  have revealed (not concealed) that Plaintiffs were not being

24  paid for all of their alleged compensable overtime." Lundy, 711

1  F.3d at 119.  Thus, the District Court properly dismissed the

2  RICO claims, and, because the claims cannot be pled on these

3  facts, they were properly dismissed with prejudice.

4

5                                    V

6      Finally, Plaintiffs challenge the District Court's

7  conclusion that there is no basis for a collective or class

8  action and request that the case be remanded to a new judge.

9  Neither argument has merit.  First, the District Court dismissed

10 the Megginson, Alamu, and Yarus Plaintiffs' motions to certify

11 the collective and class actions as moot following dismissal of

12 the complaints in their entirety, which was not error.  Nakahata

13 I, 2011 WL 321186, at *7.  Furthermore, Plaintiffs may renew

14 their motions for certification on remand, so there was no

15 prejudice.  Second, Plaintiffs' have failed to show any lack of

16 impartiality on the part of the District Court, and we find no

17 reason to believe that the District Court will be unable to

18 effectuate the remand order; therefore, the request for remand

19 to a new judge is denied. Cf. Shcherbakovskiy v. Da Capo Al

20 Fine, Ltd., 490 F.3d 130, 142 (2d Cir. 2007) (reassigning a case

21 on remand where the trial judge "rendered a visceral judgment on

22 appellant's personal credibility, namely that his denial of

23 control was 'nonsense,' 'drivel,' a 'fraud,' and a 'lie'").

24

1                        **CONCLUSION**

2        Consistent with the foregoing opinion, the District Court's

3   dismissal with prejudice of the FLSA gap-time, conversion,

4   estoppel, fraud, negligent misrepresentation, and RICO claims is

5   AFFIRMED.  We REMAND the FLSA and NYLL overtime claims, the NYLL

6   gap-time claims, the breach of express and implied oral contract

7   claims, the breach of an implied covenant of good faith and fair

8   dealing claims, the quantum meruit claims, and the unjust

9   enrichment claims for amended pleading.  Therefore, we VACATE

10  the order terminating the case and REMAND for further

11  proceedings consistent with this opinion.